# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|   |   |
|---|---|
| **JERRY LEWIS BEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Civil Action No. 05-1076 (JGP)** |
| | ) |
| **U.S. DEPARTMENT OF JUSTICE,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

_____

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, pursuant to Fed. R. Civ. P. 56, respectfully moves for entry of summary

judgment in its favor. Defendant so moves on the ground that there is no genuine issue of

material fact and defendant is entitled to judgment as a matter of law. As support for this motion,

the Court is respectfully referred to Defendant's Statement of Undisputed Material Facts, the

memorandum of points and authorities in support of the instant motion, the Declaration of David

M. Hardy and attachments thereto, and the entire record in this case.

To the extent that the Court may rely on matters outside of the pleadings, the Court may

enter summary judgment in favor of the defendants. _See_ Fed. R. Civ. P. 56. Plaintiff _pro se_

should take notice that any factual assertions contained in the documents in support of this

motion will be accepted by the Court as true unless the plaintiff submits his own affidavit or

other documentary evidence contradicting the assertions in the documents. See Neal v. Kelly,

963 F.2d 453, 456-57 (D.C. Cir. 1992) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall
> set forth such facts as would be admissible in evidence, and shall show

affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

A proposed Order is attached.

Respectfully submitted,

_____

KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney


_____

R. CRAIG LAWRENCE, D.C. Bar # 171538
Assistant United States Attorney


_____

LISA S. GOLDFLUSS, D.C. Bar #417787
Assistant United States Attorney
501 3rd Street, N.W., 4th Floor
Washington, D.C.  20530
(202) 514-7198
Counsel for Defendant

2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JERRY LEWIS BEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action Number** |
| **v.** ) | **05-1076 (JGP)** |
| ) | |
| **U.S. DEPARTMENT OF JUSTICE,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and pertains to the processing of plaintiff *pro se*'s FOIA request by the Federal Bureau of Investigation ("FBI"). The subject FOIA request sought information pertaining to the telephone toll records covering the month of November, 1985, for two residential telephone numbers that were issued to plaintiff. See Complaint ¶¶ 1-2. See also Declaration of David M. Hardy ("Hardy Declaration" or "Hardy Decl."), attached hereto, ¶ 7 and Exhibit A thereto. Plaintiff had advised the FBI, and alleges in the Complaint, that the subject records were located "in St. Louis FBI file [245B-5], which is Titled 'Jerry Lewis Bey, et. al. Moorish Science temple of America.'" Complaint ¶ 1; see also Hardy Decl. ¶ 4 and Exhibit A thereto.[1]

---

[1] As the Hardy Declaration demonstrates, plaintiff submitted several FOIA/Privacy Act requests to the FBI pertaining to records about him. See Hardy Decl. ¶¶ 9, 12 n.1, Exhibits C, F. The only FOIA request that is the subject of the instant action is plaintiff's request for the toll records for the two telephone numbers for the duration of the month of November, 1985. Complaint ¶ 2.

As discussed below, although it appears reasonably clear that the FBI once maintained some records responsive to plaintiff's request, the FBI has undertaken, in response to that request, a diligent search of the only files in which responsive records reasonably would be located, and has concluded, based on those searches, that no responsive records currently exist within the possession and control of the FBI.   The FBI has complied with its obligations under the FOIA.   There are no material facts in dispute and the government is entitled to judgment in its favor as a matter of law.   Accordingly, summary judgment should be granted pursuant to Federal Rule of Civil Procedure 56.

## UNDISPUTED MATERIAL FACTS[2]

### A.  Chronology of Correspondence

1.  By letter dated August 30, 2002, to the FBI, plaintiff made a Freedom of Information Act/Privacy Act ("FOIPA") request for records pertaining to himself in St. Louis file 245B-SL-5 concerning telephone toll records for the month of November, 1985, for two telephone numbers that were issued to him during the year of 1985.  See Hardy Decl. ¶ 7 and Exhibit A thereto.

2.  By letter dated September 27, 2002, the FBI sent a letter to plaintiff acknowledging receipt of his FOIPA request and advising him that the request had been assigned FOIPA Request Number 967782.  Hardy Decl. ¶ 8 and Exhibit B thereto.

3.  In letters respectively dated May 9, 2003, July 23, 2003, December 11, 2003, and January 18, 2004, addressed to the FBI, plaintiff reiterated his request for telephone toll records for his home telephone number [(314) 355-6721] for the period of July of 1985 through

---

[2]  A freestanding statement of undisputed material facts is filed herewith pursuant to the Local Civil Rules.

2

December of 1985.  Hardy Decl. ¶¶ 9, 10, 16, 17 and Exhibits C, D, J and K thereto.

    4.  By letter dated November 6, 2003, and re-sent on November 12, 2003,[3] the FBI advised plaintiff that 528 pages of records from Subfiles C through I and Subfiles K through M of St. Louis file 245-SL-5 had been processed pursuant to the provisions of the FOIPA and that 458 pages were being released to him with certain information being exempt from disclosure pursuant to subsections (b)(2), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F) of the Freedom of Information Act and subsection (j)(2) of the Privacy Act.  Hardy Decl. ¶ 12 and Exhibit F thereto.[4]  This letter also advised that, along with prior releases of records made to him on May 31, 2000, and November 14, 2001, this release of records completed the FBI's response to his FOIPA request, and that all releasable documents from St. Louis file 245-SL-5 had been released to him.  Id.  See also id. ¶ 13

    5.  By letter dated February 2, 2004, FBIHQ responded to plaintiff's numerous follow-up letters regarding the records contained in FBI file # SL-245B-5-333, explaining that with the release of documents via correspondence dated November 6, 2003, all of the documents contained in FBI file #245B-5 had been processed and released to him pursuant to the provisions of the FOIA and the PA.  Hardy Decl. ¶ 18 and  Exhibit L thereto.

---

[3] The letter from FBI Headquarters ("FBIHQ") to plaintiff, dated November 6, 2003, was inadvertently mailed to plaintiff's former address at the U.S. Penitentiary at Beaumont, Texas. The letter dated November 12, 2003 was re-sent to his updated address at FCI Edgefield in Edgefield, SC. Id. ¶ 13 and Exhibit G thereto.

[4] These 458 pages released to plaintiff constituted the FBI's response to plaintiff's earlier FOIPA request dated July 31, 2001. That request is not at issue in this litigation, which concerns only "telephone toll records" for two telephone numbers for the month of November 1985. Hardy Decl. ¶12 n.1.

6.  By letter dated February 7, 2004, addressed to the Department of Justice, Office of Information and Privacy, plaintiff filed an administrative appeal of the decision of the FBI to not disclose to him the telephone toll records of his home telephone number.  Hardy Decl. ¶ 19 and Exhibit M thereto.

7.  By letter dated March 4, 2004, from the Department of Justice, Office of Information and Privacy to plaintiff, plaintiff was advised that his administrative appeal had been assigned Appeal Number 04-1113.  Hardy Decl. ¶ 20 and Exhibit N thereto.

8.  By letter dated July 21, 2004, to the Department of Justice, Office of Information and Privacy, plaintiff inquired as to the status of his administrative appeal.  Hardy Decl. ¶ 21 and Exhibit O thereto.

**B.  Defendant's Search for Responsive Documents**

9.  The Hardy Declaration demonstrates through detailed, non-conclusory and good-faith averments that, in this case, the FBI engaged in a good-faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.  Hardy Decl. ¶¶ 22-41.

10.  In response to plaintiff's FOIA request, the FBI searched its Central Records System (CRS) at both FBIHQ and the St. Louis Field Office for documents responsive to plaintiff's request.  Id. ¶ 27.

11.  The FBI's CRS is a carefully indexed system of records in which the FBI maintains all pertinent information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities.  Id. ¶ 22.  Records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. Id.

4

Numerical sequences of files in the CRS are broken down according to subject matter.  Id.
Subject matter areas of the files in the CRS relate, *inter alia*, to individuals, organizations,
companies, publications, activities and/or foreign intelligence matters.  Id.  While some CRS
records are maintained at FBIHQ, records pertinent to specific field offices are maintained in
those field offices.  Id.

12.  FBIHQ and each field division can access the CRS through the automated and
manual General Indices.  Id. ¶¶ 23- 24.[5]  The General Indices are arranged in alphabetical order
and consist of an index on various subjects, including the names of individuals and
organizations.  Id.¶ 24.  Only information considered relevant or essential for future retrieval is
indexed.  Id. ¶ 26.  Without an index to this mass of information, information essential to
ongoing investigations could not be readily retrieved.  Id.  The FBI files would thus be merely
archival in nature and could not effectively be used to serve the mandated mission of the FBI,
which is to investigate violations of federal criminal statutes.  Id.  The General Indices to the
CRS files are thus the means by which the FBI can determine what retrievable information, if
any, the FBI may have in its CRS files on a particular subject matter.   Id.

13.  Searches made in the General Indices to locate records concerning a particular
subject, such as "Jerry Lewis Bey," are made by searching the subject requested in the index.  Id.
¶ 24.  FBI field divisions have automated indexing functions. Id.

_____

[5]  An index reference falls into two general categories: A "main" index reference and a
"cross-reference" index reference.  A "main" index reference carries the name of an individual,
organization, activity or the like, which is the main subject of a file maintained in the system.  A
"cross-reference" index reference contains only a mention or reference to an individual or
organization which is located in the body of a communication in a file concerning the
investigation of another individual, organization, or event.  Id.

14. On October 16, 1995, the FBI implemented its Automated Case Support (ACS) system for all field offices, Legats and FBIHQ. Id. ¶ 25. More than 105 million records were converted from automated systems previously utilized by the FBI. Id. ACS consists of three automated applications that support case management functions for all FBI investigative and administrative cases. Id. The functions, structure and operations of each of those automated applications are detailed in the Hardy Declaration ¶¶ 25(a), (b), and (c). Mr. Hardy's description of these functions, structure and operations suggests a records system that is extremely organized and well indexed, and that affords retrieval of information with reasonable precision. See id.

15. In response to plaintiff's FOIPA request, FBIHQ and the St. Louis Field Office initiated searches of their respective Automated General Indices to the CRS to identify any records concerning plaintiff. Id. ¶ 27. As result of this search, FBIHQ identified St. Louis Field Office main file number 245-B-SL-5 as a location in which documents responsive to plaintiff's FOIA request might reasonably be found. Id. This St. Louis file was forwarded to FBIHQ for processing pursuant to the provisions of the FOIPA and all releasable documents contained in this file were subsequently released to plaintiff pursuant to plaintiff's earlier FOIA requests not the subject of this suit. See id. ¶¶ 12 and n.1, 27.

16. Pursuant to this litigation by plaintiff, Special Agent Peter Krusing, the Chief Division Counsel of the St. Louis Field Office, personally conducted a complete review of all of the documents contained in St. Louis file 245B-SL-5 in an effort to locate the specific telephone toll records sought by plaintiff. Id. ¶ 30. Concurrently, a Legal Administrative Specialist in the FOIPA Litigation Support Unit at FBIHQ also personally conducted a complete review of all of the documents contained in the copy of St. Louis file 245B-SL-5 that was used in the processing

6

of plaintiff's FOIPA request. Id.  Both of these reviews determined that the specific telephone

toll records sought by plaintiff are not contained in this St. Louis file.  Id.

17.  The  St. Louis file 245B-SL-5  exists only in a paper format;  there are no

computerized or digitized records within this file.  Id. ¶ 31. The searches of this file conducted by

the St. Louis Field Office Chief Division Counsel and the Legal Administrative Specialist at

FBIHQ consisted of a document-by-document review of all of the paper documents within this

file.  Id.

18.  These reviews conducted by both the St. Louis Field Office and FBIHQ determined

that on January 21, 1986, the St. Louis Field Office did obtain telephone toll records of telephone

number (314) 355-6721 for the period of July of 1985 through December of 1985 through the use

of an Administrative Subpoena served on the Southwestern Bell Telephone Company.  Id.¶ 32.

However, these reviews have also determined that these telephone toll records were apparently

not retained by the St. Louis Field Office and filed in St. Louis file 245B-SL-5.  Id.

19.  The only documents in this file which refer to telephone number (314) 355-6721 are

attached to the Hardy Declaration as Exhibit P.  Id. ¶ 33. These four documents are identified as

Serials 329, 333, 1A Cover Sheet, and Serial 1A93 of St. Louis file 245-B-SL-5.  Id.  Serial 329

is a letter from the St. Louis Field Office to the Southwestern Bell Telephone company, dated

January 14, 1986, requesting that subscriber information and long distance toll records for three

telephone numbers in the St. Louis area, including plaintiff's telephone number (314) 355-6721,

be provided to the St. Louis Field Office pursuant to an official criminal investigation of a

suspected violation of Title 21 of the United States Code.  Id.  Serial 333 is an FBI Form FD-

302 detailing the acquisition by the FBI of subscriber information and long distance toll records

for plaintiff's telephone number (314) 355-6721 for the period of July 1985 through December 1985 from the Southwestern Bell Telephone Company pursuant to an Administrative Subpoena. Id. The third document is a 1A Section Cover Sheet which lists the contents of Serial 1A93 as an Administrative Subpoena for three telephone numbers in the St. Louis area, including plaintiff's telephone number (314) 355-6721. Id.[6] Serial 1A93 consists of a 1A envelope and an Administrative Subpoena served on the Southwestern Bell Telephone Company for subscriber billing information and long distance toll records for the period of July 1985 through December 1985 for three St. Louis area telephone numbers, including plaintiff's telephone number (314) 355-6721. See Exhibit P to Hardy Decl.

20.  These reviews of St. Louis file 245B-SL-5 conducted by the St. Louis Office and FBIHQ also determined that there are no references in this file to plaintiff's other telephone number, (314) 741-3341.  Id. ¶ 34. There is no documentary evidence contained in this file that the FBI ever attempted to obtain any telephone toll records for this telephone number and there is no mention of this telephone number anywhere in St. Louis file 245-B-SL-5.  Id.

21.  The FBI has considered the possibility as to whether there may be any additional locations where the requested documents concerning these telephone toll records would reasonably be expected to be located, and has concluded that there are no other files, apart from the St. Louis file, in which the subject documents could reasonably be located.  Id. ¶ 35.

---

[6]  The 1A Section of a FBI file is utilized to separately file documentary material obtained or created during the course of an investigation, such as photographs, telephone toll records, subpoenas, and handwritten interview notes.  See Hardy Decl. ¶ 33 n.3.

8

## ARGUMENT

### A.    Standard for Summary Judgment

Summary judgment is required where no genuine dispute exists as to any material fact and a party should prevail as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation. Id. at 247.  "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case." Sweats Fashions, Inc. v. Pannill Knitting Company, Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Thus, to avoid summary judgment, the plaintiff must present some objective evidence that would enable the court to find that the plaintiff is entitled to relief.  In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute.  Id. at 322-23.

In Anderson, the Supreme Court explained under what circumstances summary judgment is appropriate:

> If the [non-moving party's] evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted . . . [T]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor). In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### B.    Summary Judgment In FOIA Cases

The summary judgment standards set forth above apply to FOIA cases, which are typically decided on motions for summary judgment. See Cappabianca v. Commissioner, U.S. Customs Serv., 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing Miscavige v. IRS, 2 F.3d 366, 368 (11th Cir. 1993)). In a FOIA suit, a federal agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, has not been withheld, is unidentifiable, or is exempt from disclosure. Students Against Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. U.S. Dept. of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the plaintiff with affidavits or declarations and other evidence demonstrating that the documents withheld are exempt from disclosure. Hayden v. National Security Agency/ Cent. Sec. Serv., 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980); Church of Scientology v. U.S. Dept. of Army, 611 F.2d 738, 742 (9th Cir. 1980). Summary

judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits
(or declarations) if the "affidavits are 'relatively detailed, non-conclusory, and not impugned by
evidence ... of bad faith on the part of the agency.'"  Public Citizen, Inc. v. Dept. of State, 100 F.
Supp.2d 10, 16 (D.D.C. 2000) (quoting McGhee v. Central Intelligence Agency, 697 F.2d 1095,
1102 (D.C. Cir. 1983)); Citizens Commission on Human Rights v. FDA, 45 F.3d 1325, 1329 (9th
Cir. 1995); Bowen v. FDA, 925 F.2d 1224, 1227 (9th Cir. 1991).  See also Hayden, 608 F.2d at
1387; Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).

### C.    The FBI Undertook a Proper and Legally Sufficient Search for Documents Responsive to Plaintiff's FOIA Request.

The FOIA requires agencies to conduct reasonable searches for records issued pursuant to
the statute.  See Weisburg v. Dept of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  In this
regard, agencies are required to make a "good faith effort to conduct a search for the requested
records, using methods which can be reasonably expected to produce the information requested."
Oglesby v. Department of the Army, 920 F. 2d 57, 68 (D.C. Cir. 1990). The fundamental
"question is not 'whether there might exist any other documents possibly responsive to the
request, but rather whether the search for those documents was adequate.'" Steinberg v. Dept of
Justice , 23 F.3d 548, 551 (D.C. Cir. 1994), quoting Weisberg, 745 F. 2d at 1485.  The agency
can establish the reasonableness of its search by affidavits, so long as statements in those
affidavits are sufficiently detailed, are non-conclusory, and are offered in good faith.  Weisberg,
745 F. 2d at 1485; Perry v. Block, 684 F.2d 121, 126 (D.C. Cir. 1982).  In the absence of
countervailing evidence, or apparent inconsistency of proof, affidavits that explain in reasonable
detail the scope and method of the search conducted by the agency will suffice to demonstrate

compliance with the obligations imposed by the FOIA.  Perry, 684 F. 2d at 127.

The agency's search should be reasonably calculated to uncover all responsive records. Weisberg, 745 F.2d at 1485. Therefore, an agency should search those offices or components reasonably likely to have responsive records.  Knight v. Food and Drug Administration, 938 F. Supp. 710, 716 (D. Kan. 1996). The FOIA does not require that an agency search every division or field office on its own initiative in response to a FOIA request when responsive documents are likely to be located in one place. Marks v. United States Dep't of Justice, 578 F.2d 261, 263 (9th Cir. 1978).  Nor does the FOIA require that the agency search every record system. Oglesby, 920 F.2d 68. Furthermore, the agency is not required to speculate about potential leads to the location of responsive documents.  Kowalczyk v. Department of Justice, 73 F.3d 386, 389 (D.C. Cir. 1996).

The Hardy Declaration demonstrates through detailed, non-conclusory and good-faith averments that, in this case, the FBI engaged in a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. Department of the Army, 920 F. 2d at 68.   Plaintiff's FOIA request sought access to the telephone toll records for two telephone numbers that were issued to him, specifically (314) 741-3341 and (314) 355-6721, for the period of November of 1985.  See Hardy Decl. ¶ 4.   In response to plaintiff's FOIA request, the FBI searched its Central Records System (CRS) at both FBI Headquarters (FBIHQ) and the St. Louis Field Office for documents responsive to plaintiff's request. Id. at ¶27.

The FBI's CRS is a carefully indexed system of records in which the FBI maintains all pertinent information which it has acquired in the course of fulfilling its mandated law

enforcement responsibilities.  Id. ¶ 22.  Records maintained in the CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. Id. Numerical sequences of files in the CRS are broken down according to subject matter. Id. Subject matter areas of the files in the CRS relate, *inter alia*, to individuals, organizations, companies, publications, activities and/or foreign intelligence matters. Id.  While some CRS records are maintained at FBIHQ, records pertinent to specific field offices are maintained in those field offices. Id.

FBIHQ and each field division can access the CRS through the General Indices.  Id. ¶¶ 23- 24. The General Indices are arranged in alphabetical order and consist of an index on various subjects, including the names of individuals and organizations.  Id. Only information considered pertinent, relevant or essential for future retrieval is indexed.  Id. Without an index to this mass of information, information essential to ongoing investigations could not be readily retrieved. Id. The FBI files would thus be merely archival in nature and could not effectively be used to serve the mandated mission of the FBI, which is to investigate violations of Federal criminal statutes. Id.  The General Indices to the CRS files are thus the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter.  Id. Communications directed to FBIHQ from the various field offices and Legal Attaches (Legats) are filed in the pertinent case files and indexed to the names of individuals, groups, or organizations which are listed in the case caption(s) or title(s) as subject(s), suspect(s) or victim(s).  Id.  Thereafter, searches in this index to locate records concerning particular subjects are made by searching the name of the subject requested in the index.  Id.

On October 16, 1995, the FBI implemented its Automated Case Support (ACS) system

for all field offices, Legats and FBIHQ.  Id. ¶ 25.  More than 105 million records were converted from automated systems previously utilized by the FBI.  Id.  ACS consists of three automated applications that support case management functions for all FBI investigative and administrative cases.  Id.  The functions, structure and operations of each of those automated applications are detailed in the Hardy Declaration ¶¶ 25(a), (b), and (c).  Mr. Hardy's description of these functions, structure and operations suggests a records system that is extremely organized and well indexed, and that affords retrieval of information with reasonable precision.

In response to plaintiff's FOIPA request, FBIHQ and the St. Louis Field Office initiated searches of their respective Automated General Indices to the CRS to identify any records concerning plaintiff.  Id. ¶27.  As result of this search, FBIHQ identified St. Louis Field Office main file number 245-B-SL-5 as a location in which documents responsive to plaintiff's FOIA request might reasonably be found.  Id. This St. Louis file was forwarded to FBIHQ for processing pursuant to the provisions of the FOIPA and all releasable documents contained in this file were subsequently released to plaintiff pursuant to plaintiff's earlier FOIA requests not the subject of this suit.  See id. ¶¶ 12 and n.1, 27.

Pursuant to this litigation by plaintiff, Special Agent Peter Krusing, the Chief Division Counsel of the St. Louis Field Office, personally conducted a complete review of all of the documents contained in St. Louis file 245B-SL-5 in an effort to locate the specific telephone toll records sought by plaintiff.  Id. ¶ 30.  Concurrently, a Legal Administrative Specialist in the FOIPA Litigation Support Unit at FBIHQ also personally conducted a complete review of all of the documents contained in the copy of St. Louis file 245B-SL-5 that was used in the processing of plaintiff's FOIPA request. Id.  Both of these reviews determined that the specific telephone

14

toll records sought by plaintiff are not contained in this St. Louis file.  Id.

     The  St. Louis file 245B-SL-5  exists only in a paper format;  there are no computerized or digitized records within this file.  Id. ¶ 31. The searches of this file conducted by the St. Louis Field Office Chief Division Counsel and the Legal Administrative Specialist at FBIHQ consisted of a document-by-document review of all of the paper documents within this file.  Id.

     These reviews conducted by both the St. Louis Field Office and FBIHQ determined that on January 21, 1986, the St. Louis Field Office did obtain telephone toll records of telephone number (314) 355-6721 for the period of July of 1985 through December of 1985 through the use of an Administrative Subpoena served on the Southwestern Bell Telephone Company.  Id.¶ 32. However, these reviews have also determined that these telephone toll records were apparently not retained by the St. Louis Field Office and filed in St. Louis file 245B-SL-5.  Id.

     The only documents in this file which refer to telephone number (314) 355-6721 are attached to the Hardy Declaration as Exhibit P.  Id. ¶ 33. These four documents are identified as Serials 329, 333, 1A Cover Sheet, and Serial 1A93 of St. Louis file 245-B-SL-5.  Id.  Serial 329 is a letter from the St. Louis Field Office to the Southwestern Bell Telephone company, dated January 14, 1986, requesting that subscriber information and long distance toll records for three telephone numbers in the St. Louis area, including plaintiff's telephone number (314) 355-6721, be provided to the St. Louis Field Office pursuant to an official criminal investigation of a suspected violation of Title 21 of the United States Code.  Id.  Serial 333 is an FBI Form FD-302 detailing the acquisition by the FBI of subscriber information and long distance toll records for plaintiff's telephone number (314) 355-6721 for the period of July 1985 through December 1985 from the Southwestern Bell Telephone Company pursuant to an Administrative Subpoena.

Id. The third document is a 1A Section Cover Sheet which lists the contents of Serial 1A93 as an

Administrative Subpoena for three telephone numbers in the St. Louis area, including plaintiff's

telephone number (314) 355-6721. Id.[7] Serial 1A93 consists of a 1A envelope and an

Administrative Subpoena served on the Southwestern Bell Telephone Company for subscriber

billing information and long distance toll records for the period of July 1985 through December

1985 for three St. Louis area telephone numbers, including plaintiff's telephone number (314)

355-6721. See Exhibit P to Hardy Decl.

These reviews of St. Louis file 245B-SL-5 conducted by the St. Louis Office and FBIHQ

also determined that there are no references in this file to plaintiff's other telephone number,

(314) 741-3341.  Id. ¶ 34. There is no documentary evidence contained in this file that the FBI

ever attempted to obtain any telephone toll records for this telephone number and there is no

mention of this telephone number anywhere in St. Louis file 245-B-SL-5.  Id.

The FBI has considered the possibility as to whether there may be any additional

locations where the requested documents concerning these telephone toll records would

reasonably be expected to be located, and has concluded that there are no other files, apart from

the St. Louis file, in which the subject documents could reasonably be located.  Id. ¶ 35.

---

[7] The 1A Section of a FBI file is utilized to separately file documentary material obtained
or created during the course of an investigation, such as photographs, telephone toll records,
subpoenas, and handwritten interview notes.  See Hardy Decl. ¶ 33 n.3.

Based on the detailed description of the nature and scope of the FBI's search for the records responsive to plaintiff's FOIA request as set forth in the Hardy Declaration, it is clear that the FBI conducted a reasonable search for responsive records in the locations in which responsive records would reasonably be expected to be found.  It is also clear that, in conducting this search, the FBI used methods "which can be reasonably expected to produce the information requested." Oglesby v. Department of the Army, 920 F.2d at 68.  The FBI has thus satisfied the search obligations imposed upon it under law.

## CONCLUSION

As set forth above, the FBI has responded properly to plaintiff's FOIA request and has complied with its obligations under the FOIA.  Accordingly, the Court should grant defendant's motion for summary judgment.

Respectfully submitted,

_____

KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney


_____

R. CRAIG LAWRENCE, D.C. Bar # 171538
Assistant United States Attorney


_____

LISA S. GOLDFLUSS, D.C. Bar #417787
Assistant United States Attorney
501 3rd Street, N.W., 4th Floor
Washington, D.C.  20530
(202) 514-7198
Counsel for Defendant

17

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
JERRY LEWIS BEY,                        )
                                        )
   Plaintiff,                           )
                                        )    Civil Action No. 05-1076 (JGP)
          v.                            )
                                        )
U.S. DEPARTMENT OF JUSTICE,             )
                                        )
   Defendant.                           )
                                        )
_____)

## DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.  Chronology of Correspondence

1.  By letter dated August 30, 2002, to the FBI, plaintiff made a Freedom of Information Act/Privacy Act ("FOIPA") request for records pertaining to himself in St. Louis file 245B-SL-5 concerning telephone toll records for the month of November, 1985, for two telephone numbers that were issued to him during the year of 1985.  See Hardy Decl. ¶ 7 and Exhibit A thereto.

2.  By letter dated September 27, 2002, the FBI sent a letter to plaintiff acknowledging receipt of his FOIPA request and advising him that the request had been assigned FOIPA Request Number 967782.  Hardy Decl. ¶ 8 and Exhibit B thereto.

3.  In letters respectively dated May 9, 2003, July 23, 2003, December 11, 2003, and January 18, 2004, addressed to the FBI, plaintiff reiterated his request for telephone toll records for his home telephone number [(314) 355-6721] for the period of July of 1985 through December of 1985.  Hardy Decl. ¶¶ 9, 10, 16, 17 and Exhibits C, D, J and K thereto.

4.  By letter dated November 6, 2003, and re-sent on November 12, 2003,[8] the FBI advised plaintiff that 528 pages of records from Subfiles C through I and Subfiles K through M of St. Louis file 245-SL-5 had been processed pursuant to the provisions of the FOIPA and that 458 pages were being released to him with certain information being exempt from disclosure pursuant to subsections (b)(2), (b)(7)(C), (b)(7)(D), (b)(7)(E), and (b)(7)(F) of the Freedom of Information Act and subsection (j)(2) of the Privacy Act.  Hardy Decl. ¶ 12 and Exhibit F thereto.[9]  This letter also advised that, along with prior releases of records made to him on May 31, 2000, and November 14, 2001, this release of records completed the FBI's response to his FOIPA request, and that all releasable documents from St. Louis file 245-SL-5 had been released to him.  Id.  See also id. ¶ 13

5.  By letter dated February 2, 2004, FBIHQ responded to plaintiff's numerous follow-up letters regarding the records contained in FBI file # SL-245B-5-333, explaining that with the release of documents via correspondence dated November 6, 2003, all of the documents contained in FBI file #245B-5 had been processed and released to him pursuant to the provisions of the FOIA and the PA.  Hardy Decl. ¶ 18 and  Exhibit L thereto.

6.  By letter dated February 7, 2004, addressed to the Department of Justice, Office of Information and Privacy, plaintiff filed an administrative appeal of the decision of the FBI to not

---

[8] The letter from FBI Headquarters ("FBIHQ") to plaintiff, dated November 6, 2003, was inadvertently mailed to plaintiff's former address at the U.S. Penitentiary at Beaumont, Texas. The letter dated November 12, 2003 was re-sent to his updated address at FCI Edgefield in Edgefield, SC. Id. ¶ 13 and Exhibit G thereto.

[9] These 458 pages released to plaintiff constituted the FBI's response to plaintiff's earlier FOIPA request dated July 31, 2001. That request is not at issue in this litigation, which concerns only "telephone toll records" for two telephone numbers for the month of November 1985. Hardy Decl.  ¶12 n.1.

disclose to him the telephone toll records of his home telephone number.  Hardy Decl. ¶ 19 and

Exhibit M thereto.

7.  By letter dated March 4, 2004, from the Department of Justice, Office of Information

and Privacy to plaintiff, plaintiff was advised that his administrative appeal had been assigned

Appeal Number 04-1113.  Hardy Decl. ¶ 20 and Exhibit N thereto.

8.  By letter dated July 21, 2004, to the Department of Justice, Office of Information and

Privacy, plaintiff inquired as to the status of his administrative appeal.  Hardy Decl. ¶ 21 and

Exhibit O thereto.

**B.   Defendant's Search for Responsive Documents**

9.  The Hardy Declaration demonstrates through detailed, non-conclusory and good-faith

averments that, in this case, the FBI engaged in a good-faith effort to conduct a search for the

requested records, using methods which can be reasonably expected to produce the information

requested.  Hardy Decl. ¶¶ 22-41.

10.   In response to plaintiff's FOIA request, the FBI searched its Central Records System

(CRS) at both FBIHQ and the St. Louis Field Office for documents responsive to plaintiff's

request. Id. ¶ 27.

11.   The FBI's CRS is a carefully indexed system of records in which the FBI maintains

all pertinent information which it has acquired in the course of fulfilling its mandated law

enforcement responsibilities.  Id. ¶ 22.  Records maintained in the CRS consist of administrative,

applicant, criminal, personnel, and other files compiled for law enforcement purposes. Id.

Numerical sequences of files in the CRS are broken down according to subject matter.  Id.

Subject matter areas of the files in the CRS relate, *inter alia*, to individuals, organizations,

companies, publications, activities and/or foreign intelligence matters.  Id.  While some CRS records are maintained at FBIHQ, records pertinent to specific field offices are maintained in those field offices.  Id.

12.  FBIHQ and each field division can access the CRS through the automated and manual General Indices.  Id. ¶¶ 23- 24.[10]   The General Indices are arranged in alphabetical order and consist of an index on various subjects, including the names of individuals and organizations.  Id.¶ 24.   Only information considered relevant or essential for future retrieval is indexed.  Id. ¶ 26.  Without an index to this mass of information, information essential to ongoing investigations could not be readily retrieved.  Id.  The FBI files would thus be merely archival in nature and could not effectively be used to serve the mandated mission of the FBI, which is to investigate violations of federal criminal statutes.  Id.  The General Indices to the CRS files are thus the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter.   Id.

13.  Searches made in the General Indices to locate records concerning a particular subject, such as "Jerry Lewis Bey", are made by searching the subject requested in the index.  Id. ¶ 24.   FBI field divisions have automated indexing functions. Id.

14. On October 16, 1995, the FBI implemented its Automated Case Support (ACS) system  for all field offices, Legats and FBIHQ.  Id. ¶ 25.   More than 105 million records were

---

[10]   An index reference falls into two general categories:  A "main" index reference and a "cross-reference" index reference.  A "main" index reference carries the name of an individual, organization, activity or the like, which is the main subject of a file maintained in the system.  A "cross-reference" index reference contains only a mention or reference to an individual or organization which is located in the body of a communication in a file concerning the investigation of another individual, organization, or event.  Id.

converted from automated systems previously utilized by the FBI.  Id.  ACS consists of three automated applications that support case management functions for all FBI investigative and administrative cases.  Id.  The functions, structure and operations of each of those automated applications are detailed in the Hardy Declaration ¶¶ 25(a), (b), and (c).  Mr. Hardy's description of these functions, structure and operations suggests a records system that is extremely organized and well indexed, and that affords retrieval of information with reasonable precision.  See id.

15.  In response to plaintiff's FOIPA request, FBIHQ and the St. Louis Field Office initiated searches of their respective Automated General Indices to the CRS to identify any records concerning plaintiff.  Id. ¶ 27.  As result of this search, FBIHQ identified St. Louis Field Office main file number 245-B-SL-5 as a location in which documents responsive to plaintiff's FOIA request might reasonably be found.  Id. This St. Louis file was forwarded to FBIHQ for processing pursuant to the provisions of the FOIPA and all releasable documents contained in this file were subsequently released to plaintiff pursuant to plaintiff's earlier FOIA requests not the subject of this suit.  See id. ¶¶ 12 and n.1, 27.

16.  Pursuant to this litigation by plaintiff, Special Agent Peter Krusing, the Chief Division Counsel of the St. Louis Field Office, personally conducted a complete review of all of the documents contained in St. Louis file 245B-SL-5 in an effort to locate the specific telephone toll records sought by plaintiff.  Id. ¶ 30.  Concurrently, a Legal Administrative Specialist in the FOIPA Litigation Support Unit at FBIHQ also personally conducted a complete review of all of the documents contained in the copy of St. Louis file 245B-SL-5 that was used in the processing of plaintiff's FOIPA request.  Id.  Both of these reviews determined that the specific telephone toll records sought by plaintiff are not contained in this St. Louis file.  Id.

5

17.  The  St. Louis file 245B-SL-5  exists only in a paper format;  there are no computerized or digitized records within this file.  Id. ¶ 31. The searches of this file conducted by the St. Louis Field Office Chief Division Counsel and the Legal Administrative Specialist at FBIHQ consisted of a document-by-document review of all of the paper documents within this file.  Id.

18.   These reviews conducted by both the St. Louis Field Office and FBIHQ determined that on January 21, 1986, the St. Louis Field Office did obtain telephone toll records of telephone number (314) 355-6721 for the period of July of 1985 through December of 1985 through the use of an Administrative Subpoena served on the Southwestern Bell Telephone Company.  Id.¶ 32. However, these reviews have also determined that these telephone toll records were apparently not retained by the St. Louis Field Office and filed in St. Louis file 245B-SL-5.  Id.

19.   The only documents in this file which refer to telephone number (314) 355-6721 are attached to the Hardy Declaration as Exhibit P.  Id. ¶ 33. These four documents are identified as Serials 329, 333, 1A Cover Sheet, and Serial 1A93 of St. Louis file 245-B-SL-5.  Id.  Serial 329 is a letter from the St. Louis Field Office to the Southwestern Bell Telephone company, dated January 14, 1986, requesting that subscriber information and long distance toll records for three telephone numbers in the St. Louis area, including plaintiff's telephone number (314) 355-6721, be provided to the St. Louis Field Office pursuant to an official criminal investigation of a suspected violation of Title 21 of the United States Code.  Id.  Serial 333 is an FBI Form FD-302 detailing the acquisition by the FBI of subscriber information and long distance toll records for plaintiff's telephone number (314) 355-6721 for the period of July 1985 through December 1985 from the Southwestern Bell Telephone Company pursuant to an Administrative Subpoena.

Id. The third document is a 1A Section Cover Sheet which lists the contents of Serial 1A93 as an

Administrative Subpoena for three telephone numbers in the St. Louis area, including plaintiff's

telephone number (314) 355-6721. Id.[11]  Serial 1A93 consists of a 1A envelope and an

Administrative Subpoena served on the Southwestern Bell Telephone Company for subscriber

billing information and long distance toll records for the period of July 1985 through December

1985 for three St. Louis area telephone numbers, including plaintiff's telephone number (314)

355-6721. See Exhibit P to Hardy Decl.

20.   These reviews of St. Louis file 245B-SL-5 conducted by the St. Louis Office and

FBIHQ also determined that there are no references in this file to plaintiff's other telephone

number, (314) 741-3341.  Id. ¶ 34. There is no documentary evidence contained in this file that

the FBI ever attempted to obtain any telephone toll records for this telephone number and there is

no mention of this telephone number anywhere in St. Louis file 245-B-SL-5.  Id.

21.   The FBI has considered the possibility as to whether there may be any additional

locations where the requested documents concerning these telephone toll records would

reasonably be expected to be located, and has concluded that there are no other files, apart from

---

[11]   The 1A Section of a FBI file is utilized to separately file documentary material
obtained or created during the course of an investigation, such as photographs, telephone toll
records, subpoenas, and handwritten interview notes.  See Hardy Decl. ¶ 33 n.3.

the St. Louis file, in which the subject documents could reasonably be located. <u>Id</u>. ¶ 35.

Respectfully submitted,

_____

KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney

_____

R. CRAIG LAWRENCE, D.C. Bar # 171538
Assistant United States Attorney

_____

LISA S. GOLDFLUSS, D.C. Bar #417787
Assistant United States Attorney
501 3rd Street, N.W., 4th Floor
Washington, D.C.  20530
(202) 514-7198
Counsel for Defendant

## CERTIFICATE OF SERVICE

THIS IS TO CERTIFY that on this 25th day of October, 2005, a copy of the foregoing was

sent by First-Class Mail, postage prepaid, to:

> **JERRY LEWIS-BEY**
> **R22328-044**
> **EDGEFIELD FEDERAL CORRECTIONAL INSTITUTION**
> **P.O. Box 725**
> **Edgefield, SC 29824**

_____

LISA S. GOLDFLUSS