# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
JERRY LEWIS BEY,                        )
                                        )
  Plaintiff,                          )
                                        )
                                        )    Civil Action No. 05-1076 (JGP)
                v.       )
                                        )
U.S. DEPARTMENT OF JUSTICE,             )
                                        )
  Defendant.                          )
                                        )
_____)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, pursuant to Fed. R. Civ. P. 56,  respectfully moves for entry of summary

judgment in its favor.  Defendant so moves on the ground that there is no genuine issue of

material fact and defendant is entitled to judgment as a matter of law.  As support for this motion,

the Court is respectfully referred to Defendant's Statement of Undisputed Material Facts, the

memorandum of points and authorities in support of the instant motion, the Third Declaration of

David M. Hardy and attachments thereto, and the entire record in this case.

To the extent that the Court may rely on matters outside of the pleadings, the Court may

enter summary judgment in favor of the defendants.  See Fed. R. Civ. P. 56.  Plaintiff _pro se_

should take notice that any factual assertions contained in the documents in support of this

motion will be accepted by the Court as true unless the plaintiff submits his own affidavit or

other documentary evidence contradicting the assertions in the documents.  See Neal v. Kelly,

963 F.2d 453, 456-57 (D.C. Cir. 1992) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall
> set forth such facts as would be admissible in evidence, and shall show

affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

A proposed Order is attached.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney


_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____
MARIAN L. BORUM, D.C. Bar #435409
Assistant United States Attorney
501 3rd Street, N.W., 4th Floor
Washington, D.C. 20530
(202) 514-6531
Counsel for Defendant

2

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
**JERRY LEWIS BEY,**                               )
                                                    )
   **Plaintiff,**                    )
                                                    )      **Civil Action Number**
       **v.**     )      **05-1076 (JGP)**
                                                    )
**U.S. DEPARTMENT OF JUSTICE,**                     )
                                                    )
   **Defendant.**                     )
                                                    )
                                                    )
_____)

## STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Pursuant to LCvR 7(h), the defendant submits this statement of material facts not in genuine dispute. The attached declaration of David M. Hardy, Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ"), supports this statement. See Third Hardy Declaration ("Third Hardy Dec."), attached hereto as Exhibit 1.

### I.   Plaintiff's FOIPA Request for Records Concerning Doris Lewis Bey

(1)   By letter dated September 20, 2002, plaintiff made a Freedom of Information-Privacy Acts (FOIPA) request to FBIHQ for  information contained in St. Louis Office file number 245-SL-5, pertaining to his ex-wife Doris Lewis Bey, whose maiden name is Doris Franklin. Third Hardy Decl. ¶ 7. Plaintiff enclosed a United States Department of Justice ("DOJ") Certification of Identity Form, signed by Doris Lewis Bey, as well as identifying information about her. Id. This form contained authorization from Doris Lewis Bey to release information about her to plaintiff. Id. This letter and enclosed forms were received by the Federal Bureau of Investigation ("FBI") St. Louis Field Office on March 13, 2003. Id.; see

Exhibit A).

    (2)  By letter dated March 25, 2003, the St. Louis Field Office acknowledged receipt of plaintiff's FOIPA request concerning Doris Lewis Bey and advised plaintiff that a search of the manual and automated indices to the Central Records System ("CRS") at the St. Louis Field Office had located records responsive to his request.  Third Hardy Dec. ¶ 8.  This letter also advised plaintiff that his FOIPA request was being referred to FBIHQ for processing.  Id.; see Exhibit B.

    (3)  By letter dated May 2, 2003, to FBIHQ, plaintiff inquired about the status of his FOIPA request regarding Doris Lewis Bey.  Third Hardy Dec. ¶ 9.  Plaintiff enclosed a copy of his March 25, 2003 letter to the St. Louis Field Office.  Id.; see Exhibit C.

    (4) By letter dated May 8, 2003, FBIHQ advised plaintiff that a search of the automated indices to the CRS at FBIHQ had not located any main file records responsive to his FOIPA request concerning Doris Lewis Bey.  Third Hardy Dec. ¶ 10.  Plaintiff also was advised that his FOIPA request had been assigned FOIPA Request Number 976807.  Id.  In addition, plaintiff was advised of the procedure to appeal the results of the CRS search to DOJ's Office of Information and Privacy ("OIP").  Id; see Exhibit D.

    (5)  By letter dated May 11, 2003, plaintiff inquired about the status of his FOIPA request concerning Doris Lewis Bey.  Third Hardy Dec. ¶ 11; see Exhibit E.

    (6)  By letter dated May 13, 2003, plaintiff acknowledged receipt of the May 8, 2003 letter from FBIHQ, and advised FBIHQ that he already had written to the St. Louis Field Office for specific records concerning Doris Lewis Bey, contained in St. Louis Office file number 245-SL-5.  Third Hardy Dec. ¶ 12.  Plaintiff enclosed copies of the May 8, 2003 FBIHQ letter and the

St. Louis Office letter dated March 25, 2003.  Id.; see Exhibit F.

(7)     By letter dated July 1, 2003, to the St. Louis Field Office, plaintiff inquired about the status of his FOIPA request concerning Doris Lewis Bey.  Third Hardy Dec. ¶ 13; see Exhibit G.

(8)     By letter dated July 15, 2003, FBIHQ released records concerning Doris Lewis Bey to plaintiff.  The letter advised plaintiff "that 15 pages of documents were reviewed and 5 pages of documents were being released to him with certain information being exempt from disclosure pursuant to Privacy Act Exemption (j)(2) and FOIA Exemptions (b)(7)(C) and (b)(7)(D)."  Third Hardy Dec. ¶ 14.  Plaintiff was advised that the records responsive to his request were designated as Serials 70 and 71 of St. Louis Office file number 245-SL-5.  Id.  In addition, plaintiff was advised of the procedure to appeal any denials in this release of records to DOJ, OIP.  Id.; see Exhibit H.

(9)     By letter dated April 7, 2004, Doris Franklin, also known as Doris Lewis Bey, requested that FBIHQ disclose to plaintiff all records regarding her which were maintained in St. Louis file 245B-5.  Third Hardy Dec. ¶ 15.  Ms. Franklin enclosed an executed Certification of Identify Form, dated April 7, 2004, as well as identifying information.  Id.  This form contained her authorization to release information about her to plaintiff.  Id.; see Exhibit I.

(10)     By letter dated July 21, 2004, plaintiff inquired about the status of his FOIPA request regarding Doris Lewis Bey.  Third Hardy Dec. ¶ 16.  Plaintiff enclosed copies of her April 7, 2004 letter to FBIHQ and the executed Certification of Identity Form, dated April 7, 2004.  Id.; see Exhibit J.

(11)     By letter dated September 20, 2004, plaintiff inquired about the status of his

FOIPA request regarding Doris Lewis Bey.  Third Hardy Dec. ¶ 17.  Plaintiff enclosed copies of her April 7, 2004 letter to FBIHQ and the executed Certification of Identity Form, dated April 7, 2004.  Id.; see Exhibit K.

(12)    By letter dated November 20, 2004, plaintiff inquired about the status of his FOIPA request regarding Doris Lewis Bey.  Third Hardy Dec. ¶ 18.  Plaintiff enclosed copies of her April 7, 2004 letter to FBIHQ and the executed Certification of Identity Form, dated April 7, 2004.  Id.; see Exhibit L.

## II.  Plaintiff's FOIPA Request for Records Concerning Tonya Lewis Bey

(13)    By letter dated July 6, 2003, plaintiff made a FOIPA request to the FBI Field Office in Springfield, Illinois ("Springfield Field Office") for all information contained in file number 72-SI-46052, which pertained to his ex-wife Tonya Lewis Bey.[1]   Third Hardy Dec. ¶ 19.  Plaintiff enclosed a Privacy Waiver and Certification of Identity Form ,dated October 12, 2003.  Id.  This executed Certification of Identity Form contained identification information about Tonya Lewis Bey and her authorization to release information about her to plaintiff.  Id.  "This form was returned to plaintiff by the Springfield [Field] Office with the notation that the signature on the form is illegible and not acceptable."  Id.; see Exhibit M.

(14)    By letter dated October 31, 2003, plaintiff advised the Springfield Field Office of his new address at the Federal Correctional Institution at Edgefield, South Carolina.  Third Hardy Dec. ¶ 20.  He also inquired about the status of his FOIPA request for specific records concerning Tonya Lewis Bey.  Id.; see Exhibit N.

(15)    By letter dated November 19, 2003, FBIHQ advised plaintiff that his request letter

[1]Tonya Lewis Bey is also known as Tonya Timmons.

4

for records regarding Tonya Lewis Bey had been forwarded to FBIHQ, by the Springfield Field Office. Third Hardy Dec. ¶ 21.  The letter also advised plaintiff "that before any action could be taken upon his FOIPA request, it would be necessary for him to submit a signed privacy waiver from Tonya Lewis Bey."  Id.  FBIHQ enclosed a Privacy Waiver and Certification of Identity Form with this letter.  Id.; see Exhibit O.

_____(16)    By letter dated November 29, 2003, plaintiff again made a FOIPA request to the Springfield Field Office for all information regarding Tonya Lewis Bey, contained in Springfield Office file number 72-SI-46052.  Third Hardy Dec. ¶ 22; see Exhibit P.

_____(17)    By letter dated December 16, 2003, plaintiff provided FBIHQ with another Privacy Waiver and Certification of Identity Form, dated December 10, 2003.  Third Hardy Dec. ¶ 23.  This form was signed by Tonya Lewis Bey and contained identification information about her.  Id.  It also contained authorization from Tonya Lewis Bey to release information about her to plaintiff."  With this letter, plaintiff enclosed a statement by Tonya Lewis Bey indicating that her new name was Tonya Timmons as well as photocopies of her Social Security Card, her Bank of America Check Card and her Georgia State Driver's License."  Id.  Finally, plaintiff enclosed copies of his November 29, 2003 letter to the Springfield Field Office, and a copy of Tonya Lewis Bey's prior Privacy Waiver and Certification of Identity form dated October 12, 2003. Third Hardy Dec. ¶ 23; see Exhibit Q.

_____(18)    By letter dated January 13, 2004, FBIHQ acknowledged receipt of plaintiff's FOIPA request for records concerning Tonya Lewis Bey.  Third Hardy Dec. ¶ 24.  The letter advised plaintiff that this request had been assigned FOIPA Request Number 989997.  Id.; see Exhibit R.

_____(19)    By letter dated February 17, 2004, FBIHQ released records concerning Tonya

Lewis Bey, also known as Tonya Timmons, to plaintiff.  Third Hardy Dec. ¶ 25.  "Plaintiff was

advised that 100 pages of documents were reviewed and 79 pages of documents were being

released to him with certain information being exempt from disclosure pursuant to FOIA

Exemptions (b)(2), (b)(7)(C), (b)(7)(D) and (b)(7)(F)."  Id.  Plaintiff also was advised of the

procedure to appeal any denials of records to DOJ, OIP.  Id.; see Exhibit S.

(20)    By letter dated April 9, 2004, Tonya Lewis Bey requested that FBIHQ disclose to

plaintiff all records maintained on her in St. Louis file 245B-5.  Third Hardy Dec. ¶ 26.  She

enclosed a signed Privacy Waiver and Certification of Identity Form, dated April 9, 2004, and

photocopies of her Social Security Card, her Bank of America Check Card and her Georgia State

Driver's License."  Id.; see Exhibit T.

_____(21)    By letter dated May 3, 2004, plaintiff advised FBIHQ that, by letter dated April 9,

2004, Tonya Lewis Bey had submitted a FOIPA request to FBIHQ.   Third Hardy Dec. ¶ 27.

This letter requested any information about her that was contained in St. Louis Office file number

245-SL-5.  Id.  Plaintiff "enclosed a copy of her letter, dated April 9, 2004, a Certification of

Identity Form, dated April 9, 2004, and photocopies of her Bank of America Check Card and her

Georgia State Driver's License."  Id.; see Exhibit U.

(22)    By letter dated July 21, 2004, to FBIHQ, plaintiff inquired about the status of his

FOIPA request concerning Tonya Lewis Bey.  Third Hardy Dec. ¶ 28; see Exhibit V.

(23)    By letter dated September 20, 2004, to FBIHQ, plaintiff inquired about the status

of his FOIPA request concerning Tonya Lewis Bey.  Third Hardy Dec. ¶ 29.  Plaintiff enclosed

copies of his May 3, 2004 letter to FBIHQ; her April 9, 2004 letter to FBIHQ, "her signed

6

Certification of Identity form dated April 9, 2004, and photocopies of her Bank of America

Check Card and her Georgia State Driver's License." Id.; see Exhibit W.

(24)    By letter dated November 20, 2004, to FBIHQ, plaintiff inquired about the status

of his FOIPA requests concerning Tonya Lewis Bey.  Third Hardy Dec. ¶ 30.  He enclosed copies

of his May 3, 2004 and September 23, 2004 letters to FBIHQ, her April 9, 2004 letter to FBIHQ,

"her signed Certification of Identity form dated April 9, 2004, and photocopies of her Bank of

America Check Card and her Georgia State Driver's License." Id.; see Exhibit X.

Respectfully submitted,

_____

KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney


_____

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____

MARIAN L. BORUM, D.C. Bar #435409
Assistant United States Attorney
501 3rd Street, N.W., 4th Floor
Washington, D.C.  20530
(202) 514-6531
Counsel for Defendant

7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

JERRY LEWIS BEY,                          )
                                          )
    Plaintiff,                            )
                                          )
                v.                        )        Civil Action Number
                                          )        05-1076 (JGP)
U.S. DEPARTMENT OF JUSTICE,               )
                                          )
    Defendant.                            )
                                          )
_____  )

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Defendant respectfully submits this Memorandum of Points and Authorities in support of

its Motion for Summary Judgment.[2]

## I. INTRODUCTION

This case arises under the Freedom of Information Act, 5 U.S.C. § 552, and the Privacy

Act, 5 U.S.C. § 522a, collectively referred to as FOIPA, and pertains to the processing of plaintiff

_____

[2] Plaintiff originally filed this Complaint on May 27, 2005. See Docket Report 1. On that date, Plaintiff also filed an Amended Complaint. See Docket Report 4. By filing his Amended Complaint without incorporating the contents of his Complaint, plaintiff voided the contents of the Complaint, thereby rendering the requests addressed therein null and void. On or about October 25, 2005, defendant filed a Motion for Summary Judgment addressing issues in the Amended Complaint only. See Docket Report 15. On or about December 2, 2005, plaintiff filed an Opposition to Defendant's Motion for Summary Judgment ("Pltf's Opp. to Summ. Judgment"). See Docket Report 18. In that Opposition, plaintiff asked that the court require defendant to address the issues raised in his Complaint. Pltf's Opp. to Summ. Judgment at 9. Given the liberal pleading rules and in order to avoid protracted procedural measures, defendant files this Motion for Summary Judgment to address the issues raised in plaintiff's Complaint. In a separate filing, Defendant will Reply to Defendant's Opposition to Summary Judgment and address the matters raised in the Amended Complaint.

*pro se*'s FOIPA requests by the Federal Bureau of Investigation ("FBI"). The subject FOIPA

requests seek records being held in FBI files concerning two of plaintiff's ex-wives, Tonya Lewis

Bey[3] and Doris Lewis Bey.[4] See Complaint ¶¶ 1, 5, 6. See also Third Declaration of David M.

Hardy ("Third Hardy Decl."), attached hereto as Exhibit 1. Defendant has undertaken searches

and fully and appropriately responded to Plaintiff's FOIA requests, providing to him all

reasonably segregable, non-exempt information. Defendant therefore has satisfied its obligations

under FOIA. There are no material facts in dispute and the government is entitled to judgment in

its favor as a matter of law.

## II.  ARGUMENT

### A.  Standard for Summary Judgment

Where no genuine dispute exists as to any material fact, summary judgment is required.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A genuine issue of material fact is one

that would change the outcome of the litigation. Id. at 247. "The burden on the moving party

may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of

evidence to support the non-moving party's case." Sweats Fashions, Inc. v. Pannill Knitting Co.,

Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere

allegations, but must instead proffer specific facts showing that a genuine issue exists for trial.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid

summary judgment, the plaintiff must present some objective evidence that would enable the

---

[3]Tonya Lewis Bey is also known as Tonya S. Timmons. See Complaint at 5.

[4]Doris Lewis Bey is also known as Doris J. Franklin. Id.

2

court to find he is entitled to relief.  In <u>Celotex Corp. v. Catrett</u>, the Supreme Court held that, in

responding to a proper motion for summary judgment, the party who bears the burden of proof on

an issue at trial must "make a sufficient showing on an essential element of [his] case" to

establish a genuine dispute.  477 U.S. 317, 322-23 (1986).

In <u>Anderson</u> the Supreme Court explained under what circumstances summary judgment

is appropriate:

> If the evidence is merely colorable, . . . or is not significantly
> probative, . . . summary judgment may be granted . . . [T]he mere
> existence of a scintilla of evidence in support of the Plaintiff's
> position will be insufficient; there must be evidence on which the
> jury could reasonably find for the Plaintiff.

<u>Anderson</u>, 477 U.S. at 252; <u>see</u> <u>also</u> <u>Laningham v. Navy</u>, 813 F.2d 1236, 1242 (D.C. Cir.  1987)

(non-moving party is "required to provide evidence that would permit a reasonable jury to find"

in its favor).  In <u>Celotex</u>, the Supreme Court further instructed that the "[s]ummary judgment

procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral

part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and

inexpensive determination of every action.'" 477 U.S. at 327 (<u>quoting</u> Fed. R. Civ. P. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are

typically decided on motions for summary judgment.[5]  <u>See</u> <u>Cappabianca v. Commissioner, U.S.</u>

<u>Customs Serv.</u>, 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly

identified, FOIA cases should be handled on motions for summary judgment") (<u>citing</u> <u>Miscavige</u>

<u>v. IRS</u>, 2 F.3d 366, 368 (11th Cir. 1993)).  In a FOIA suit, an agency is entitled to summary

---

[5]For purposes of summary judgment, an agency's decision to withhold information from a
FOIA requester is subject to <u>de novo</u> review by the courts.  <u>Hayden v. Nat'l Security Agency</u>, 608
F.2d 1381, 1384 (D.C. Cir. 1979), <u>cert. denied</u>, 446 U.S. 937 (1980).

judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure.  Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. Dep't of Justice, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the plaintiff with affidavits or declarations and other evidence which show that the documents are exempt from disclosure.  Hayden, 608 F.2d at 1386; Church of Scientology v. U.S. Dep't of Army, 611 F.2d 738, 742 (9th Cir. 1980).  Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits [or declarations] "when the affidavits describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" Trans Union LLC v. FTC, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)); see also McGhee v. CIA, 697 F.2d 1095, 1102 (D.C. Cir. 1983); Citizens Comm. on Human Rights v. FDA, 45 F.3d 1325, 1329 (9th Cir. 1995).  When the pleadings, supplemented by affidavits or declarations, show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant.  Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982).

**B.  Defendant Has Submitted a "Vaughn" Declaration**

In moving for summary judgment in a FOIA case, an agency must establish a proper basis for its withholding of responsive documents.  "In response to this special aspect of summary

4

judgment in the FOIA context, agencies regularly submit affidavits . . . in support of their motions for summary judgment against FOIA plaintiffs." Judicial Watch v. U.S. Dep't of Health and Human Services, 27 F. Supp. 2d 240, 242 (D.D.C. 1998). The declaration or affidavit (singly or collectively) is often referred to as a Vaughn index, after the case of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). There is no set formula for a Vaughn index. "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in its form." Kay v. FCC, 976 F.Supp. 23, 35 (D.D.C. 1997), aff'd 172 F.3d 919 (D.C. Cir. 1998). "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." Delaney, Midgail & Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987). See also Keys v. U.S. Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Dep't of Justice, 844 F.2d 126, 129 (3d Cir. 1988). "All that is required, and that is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." Id. at 128. The specificity of itemization needed depends upon the nature of the document and the exemption asserted. Information Acquisition Corp. v. Dep't of Justice, 444 F.Supp. 458, 462 (D.D.C. 1978).

The Vaughn Index serves a threefold purpose: (1) it identifies each document withheld; (2) it states the statutory exemption claimed; and (3) it explains how disclosure would damage the interests protected by the claimed exemption. See Citizens Comm. on Human Rights, 45 F.3d at 1325. "Of course the explanation of the exemption claim and the descriptions of withheld material need not be so detailed as to reveal that which the agency wishes to conceal, but they must be sufficiently specific to permit a reasoned judgment as to whether the material is

actually exempt under FOIA." <u>Founding Church of Scientology v. Bell</u>, 603 F.2d 945, 949 (D.C. Cir. 1979).

In the case at bar, the FBI has submitted a <u>Vaughn</u> Declaration in support of this motion for summary judgment.  The Declaration was prepared by David M. Hardy, Section Chief, Record/Information Dissemination Section, Federal Bureau of Investigation.  <u>See</u> Third Hardy Dec. ¶ 1.  Mr. Hardy is familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.  <u>See</u> Third Hardy Dec. ¶ 3.  Specifically, Mr. Hardy is aware of the treatment which has been afforded the FOIPA requests of plaintiff that are the subject of this motion.  <u>Id.</u> ¶ 3.  The Declaration submitted in support of this motion meets the requirements of <u>Vaughn v. Rosen</u>, 484 F.2d at 820, and provides the Court with the requisite basis to grant defendant's motion for summary judgment.

**C.**     **<u>Defendant Conducted a Reasonable Search for Records</u>**

In responding to a FOIA request an agency is under a duty to conduct no more than a reasonable search for responsive records.  <u>Ogelsby v. Dep't of Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1998); <u>Cleary, Gottlieb, Steen & Hamilton v. Dep't of Health, et al.</u>, 844 F.Supp. 770, 776 (D.D.C. 1993).  The search standards under the FOIA do not place upon the agency a requirement that it prove that all responsive documents have been located.  <u>Nation Magazine v. U.S. Customs Serv.</u>, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  It has been held that "the search need only be reasonable; it does not have to exhaustive."  <u>Miller v. Dep't of State</u>, 779 F.2d 1378, 1383 (8th Cir. 1985) <u>citing</u>, <u>National Cable Television Association v. F.C.C.</u>, 479 F.2d 183, 186 (D.C. Cir. 1973).  As a result, an agency under the FOIA is not required to search every

division or field office in response to a FOIA request when responsive documents are likely to be located in one place.  Marks v. Dep't of Justice, 578 F.2d 261, 263 (9th Cir. 1978).  The agency is not obligated to perform an "open-ended, broad based, and ill-defined" search of every division and office.  See Marrera v. Dep't of Justice, 622 F.Supp. 51, 54 (D.D.C. 1985).

Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent.  Nation Magazine, 71 F.3d at 892 n.7.  Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it.  Maynard v. CI., 982 F.2d 546, (1st Cir. 1993).  Simply stated, the adequacy of the search is "dependent upon the circumstances of the case."  Truitt v. Dep't of State, 879 F.2d 540, 542 (D.C. Cir. 1990).

The Third Hardy Declaration demonstrates through detailed, non-conclusory and good-faith averments that, in this case, the FBI engaged in a good-faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.  Third Hardy Dec. ¶¶ 32-39.  Therefore, the FBI has thus satisfied the search obligations imposed upon it under law.

**D.    Search for Records Responsive to Plaintiff's FOIPA Requests Concerning His Two Ex-Wives**

In plaintiff's letter dated September 20, 2002, he limited the scope of his FOIPA request concerning Doris Lewis Bey to only information concerning her that is contained in St. Louis Field Office file number 245-SL-5.  Third Hardy Dec. ¶ 36; see Exhibit A.

The FBI utilizes a well organized "Central Records System ("CRS") to conduct searches

in response to FOIA and Privacy Act requests." Third Hardy Dec. ¶ 31. A search of the indices

to the CRS at the St. Louis Office determined that Doris Lewis Bey is indexed in Serials 70 and

71 of St. Louis Field Office file number 245-SL-5. These two serials were forwarded to FBIHQ

for processing. Third Hardy Dec. ¶ 33.

St. Louis Office file 245-SL-5 pertains to an FBI narcotics investigation captioned "Jerry

Lewis Bey; Vernon Whitlock, Jr.; the Moorish Science Temple of America, et. al; Narcotics

Matter; Organized Crime Drug Enforcement Task Force Case." Id. ¶ 34. Participants in this task

force included the FBI's St. Louis Field Office, the Drug Enforcement Administration, the

Bureau of Alcohol, Tobacco and Firearms, the St. Louis Police Department as well as other local

law enforcement agencies. Id.

Serial 70 of file 245-SL-5 pertains to information furnished to the FBI by the Lambert-St.

Louis International Airport Police Department concerning the employment of Doris Lewis Bey at

the airport's Aeroplex Corporation, in November of 1984. Id. ¶ 35. The local police department

advised that it had attempted to tow Ms. Bey's car when it was parked in a reserved parking

space. Id. However, the police department was advised that she had permission to park in the

reserved parking space. Id. This serial consisted of 2 pages of documents. All pages were

released to plaintiff with certain information exempt from disclosure. Id.

Serial 71 of this file pertains to information furnished to the FBI, by the St. Louis Police

Department, concerning the arrests of plaintiff and Doris Lewis Bey on November 9, 1984 for

General Peace Disturbance. Id. ¶ 36. This serial's enclosure consisted of a copy of a report of

the St. Louis Police Department concerning these arrests. Id. The serial consisted of 11 pages of

documents. Id. All pages were released to plaintiff, with certain information exempt from

disclosure.  Id.[6]

Springfield Field Office file 72-SI-46052 pertains to an FBI Obstruction of Justice investigation of plaintiff and Tonya Lewis Bey.  Id. ¶ 39.  This investigation was conducted from January through August of 1993.  Id.  This file consisted of 99 pages of documents.  Id.  All pages were released to plaintiff with certain information exempt from disclosure.  Id.

**E.  Format Utilized for the Justification of Deleted Material**

The records responsive to plaintiff's FOIPA requests regarding Doris Lewis Bey and Tonya Lewis Bey were reprocessed to achieve maximum disclosure.  Id. ¶ 40.  Certain information that previously was withheld from disclosure to plaintiff was released.  Id.[7]

Copies of the released pages were provided to plaintiff and are attached as Exhibit Y. Each page has been consecutively numbered as "BEY-1" through "BEY-112" at the bottom of the pages.  "[T]he 10 pages of documents withheld in their entirety have been replaced by a "deleted page information sheet," which identifies the applicable FOIA exemptions relied upon to withhold these 10 pages in their entirety, as well as the numbered pages that applied to these withheld documents."  Id. ¶ 41.  The exemptions asserted as grounds of withholding documents in their entireties or in part are Privacy Act Exemption (j)(2), 5 U.S.C. §§ 552(a)(j)(2), and FOIA Exemptions (b)(2), (b)(6), (b)(7)C) and (b)(7)(D), 5 U.S.C. §§ 552(b)(2), (b)(6), (b)(7)(C) and

---

[6]FBIHQ contacted the St. Louis Police Department concerning the release of their police report.  It is their policy to provide copies of police reports, without deletions of information, to the parties who are the subjects of the report.  Id. at n.2.  Therefore the St. Louis Police Department report regarding the arrests of plaintiff and Doris Lewis Bey was released to plaintiff in its entirety.  Id.

[7]FOIA Exemption (b)(7)(F) to withhold information in these records has been withdrawn. An additional FOIA Exemption (b)(6)(C) was used as another basis for withholding disclosure. Id.

(b)(7)(D).  Id.

A coded format was used to assist the Court and plaintiff in reviewing the information

withheld.  Id. ¶ 42.  "Each instance of information withheld pursuant to the FOIA on the attached

documents is accompanied by a coded designation that corresponds to the categories listed

below.  For example, if "(b)(7)(C)-1" appears on a document, the (b)(7)(C) designation refers to

Exemption (b)(7)(C) of the FOIA concerning "Unwarranted Invasion of Privacy."  The numerical

designation (-1) following the "(b)(7)(C)" narrows the main category to the more specific

subcategory, "Names of FBI Special Agents and Support Personnel.""  Id.  The categories used to

explain the Privacy Act and FOIA exemptions asserted to withhold protected material are as

follows:

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **Category (j)(2)** | **LAW ENFORCEMENT RECORDS** |
| **Category (b)(2)** | **INTERNAL AGENCY PERSONNEL RULES AND PRACTICES** |
| **(b)(2)-1** | Internal FBI Telephone Numbers and Facsimile Numbers. |
| **Category (b)(6)** | **CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| **(b)(6)-1** | Names of FBI Special Agents and Support Personnel.  Cited in conjunction with (b)(7)(C)-1. |
| **(b)(6)-2** | Names of Local Law Enforcement Officers.  Cited in conjunction with (b)(7)(C)-2. |
| **(b)(6)-3** | Names and Identifying Information of Individuals who Provided Information and Cooperated with the FBI.  Cited in conjunction with (b)(7)(C)-3 and (b)(7)(D)-2. |

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **(b)(6)-4** | Names and Identifying Information of Individuals who are of Investigative Interest to the FBI.  Cited in conjunction with (b)(7)(C)-4. |
| **(b)(6)-5** | Names and Identifying Information of Individuals who are Merely Mentioned in FBI Records.  Cited in conjunction with (b)(7)(C)-5. |
| **Category (b)(7)(C)** | **UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| **(b)(7)(C)-1** | Names of FBI Special Agents and Support Personnel.  Cited in conjunction with (b)(6)-1. |
| **(b)(7)(C)-2** | Names of Local Law Enforcement Officers.  Cited in conjunction with (b)(6)-2. |
| **(b)(7)(C)-3** | Names and Identifying Information of Individuals who Provided Information and Cooperated with the FBI.  Cited in conjunction with (b)(6)-3 and (b)(7)(D)-2. |
| **(b)(7)(C)-4** | Names and Identifying Information of Individuals who are of Investigative Interest to the FBI.  Cited in conjunction with (b)(6)-4. |
| **(b)(7)(C)-5** | Names and Identifying Information of Individuals who are Merely Mentioned in FBI Records.  Cited in conjunction with (b)(6)-5. |
| **Category (b)(7)(D)** | **CONFIDENTIAL SOURCE MATERIAL** |
| **(b)(7)(D)-1** | Names and Identifying Information of Individuals who Provided Information and Cooperated with the FBI under an Express Assurance of Confidentiality.  Cited in conjunction with (b)(6)-3 and (b)(7)(C)-3. |

Third Hardy Dec. ¶ 42.

**F.    The FBI Properly Applied Privacy Act Exemption (j)(2)**

Title 5, United States Code, Section 552(a)(j)(2) ("Subsection (j)(2)") of the Privacy Act

exempts from mandatory disclosure systems of records "maintained by an agency or component

11

thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals . . . ." 5 U.S.C. § 552(a)(j)(2)**;** <u>Simon v. Dep't of Justice</u>, 980 F.2d 782, 783 (D.C. Cir. 1992).

Here, the FBI asserted Privacy Act exemption j(2) as a basis for withholding the investigatory files and records within its St. Louis and Springfield Offices which pertain to two criminal investigations of plaintiff, Tonya Lewis Bey, and other individuals. Serials 70 and 71 of St. Louis Field Office file 245-SL-5 were withheld because they pertain to the criminal investigations regarding plaintiffs distribution of heroin and other controlled substances. Third Hardy Dec. ¶ 44  Springfield Field Office file 72-SI-46052 was withheld because it pertained to the investigation of plaintiff and Tonya Lewis Bey for obstruction of justice. <u>Id</u>. These documents clearly were created for a law enforcement purpose and are properly exempt from disclosure in their entirety under the subsection (j)2 of the Privacy Act.[8]

## G.    The FBI Properly Applied FOIA Exemption (b)(2) -Internal Agency Rules and Practices

Title 5, United States Code, Section § 552(b)(2) ("Exemption (b)(2)") exempts from disclosure information "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to ... a genuine and significant public interest" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations. <u>Dep't of Air Force v. Rose</u>, 425 U.S. 352, 369-70

---

[8]Although access to these records was denied under the Privacy Act, they, nevertheless, were processed under the access provisions of the FOIA. <u>Id</u>.

(1976); Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992); National Treasury Employees

Union v. US Customs Service, 802 F.2d 525, 528-30 (D.C. Cir. 1986); Crooker v. ATF, 670 F.2d

1051, 1073-74 (D.C. Cir. 1981); Dorsett v. US Dept. of Treasury, 307 F.Supp.2d 28, 35-36 (D.D.C.

2004); Edmonds v. FBI, 272 F.Supp.2d 35, 50 (D.D.C. 2003).

Depending upon the nature of the information, documents will fall within either the "low

(b)(2) category" or the "high (b)(2) category." Schiller, 964 F.2d at 1207. "Low (b)(2)" information

refers to internal procedures and practices of an agency, where disclosure would constitute an

administrative burden unjustified by any genuine and significant public benefit. Martin v. Lauer, 686

F.2d 24, 34 (D.C. Cir. 1982); see also Schiller, 964 F.2d at 1207. "Low (b)(2)" information can be

protected only if the information qualifies as a personnel rule or internal practice of an agency or is

sufficiently related to such a rule or practice. See Schwaner v. Dep't of the Air Force, 898 F.2d 793,

795 (D.C. Cir. 1990); Voinche v. FBI, 46 F.Supp.2d 26, 30 (D.D.C. 1999).

Thus, trivial administrative data, such as file numbers, mail routing stamps, initials, data

processing notations, brief references to previous communications, and other like administrative

markings are exempt from disclosure. Coleman v. FBI., 13 F.Supp.2d 75, 78-79 (D.D.C. 1998),

citing, Lesar v. Dep't of Justice, 636 F.2d 472 (D.C. Cir. 1980); see also Voinche, 46 F.Supp.2d at

30 (protecting the file number for an informant and telephone extension of the Public Corruption

Unit of the FBI's Criminal Investigation Unit); Schiller, 964 F.2d at 1208 (protecting from disclosure

internal agency time deadlines and procedures, record keeping directions, instructions on which

agency official to contact for assistance, and guidelines on clearance procedures); Nix v. United

States, 572 F.2d 998, 1005 (4th Cir. 1978)(protecting cover letters of merely internal significance);

Scherer v. Kelley, 584 F.2d 170, 175-78 (7th Cir. 1978)(protecting "file numbers, initials, signature

and mail routing stamps, references to interagency transfers, and data processing references"). The notion behind this reasoning is that administrative agencies should not be burdened by responding to requests for trivial information unlikely to be the subject of public interest. Martin, 686 F.2d at 34.

### a- **(b)(2)-1**    **Internal FBI Telephone Numbers and Facsimile Numbers**

Here, the FBI applied Exemption (b)(2) to information deemed "low (b)(2)" information - - the business telephone number of an FBI Special Agent and the business facsimile number of FBI Special Agents and support personnel who participated in the investigations of plaintiff and other individuals.[9]  Third Hardy Dec. ¶ 46.  These FBI business telephone and facsimile numbers relate directly to the internal practices of the FBI in that they are used in the performance of investigative duties. Id. ¶ 47.  Disclosure of this information could subject FBI agents and support personnel to harassing telephone calls which could disrupt their official business. Id.  Release of such routine internal administrative information could impede FBI effectiveness and there is no genuine public interest in the disclosure of these numbers. Id.  Therefore, the FBI  appropriately withheld this information from disclosure pursuant to Exemption (b)(2)-1.

### H.  **The FBI Properly Applied FOIA Exemption (b)(6) - Clearly Unwarranted Invasion of Personal Privacy**

Title 5, United States Code, Section § 552(b)(6) ("Exemption (b)(6)") exempts from disclosure "personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).

The first step in the analysis is determining whether the information sought to be protected is within the scope of Exemption 6.  This step is easily satisfied:  "[t]he Supreme Court has

---

[9]  Exemption (b)(2)-1 was asserted to protect internal FBI business telephone and facsimile numbers on Bey Pages: 20, 21, 34 and 49.

interpreted the phrase 'similar files' to include all information that applies to a particular individual." Lepellitier v. FDIC, 164 F.3d 37, 46 (D.C. Cir. 1999) (quoting Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982)).  In giving meaning to the term "similar files," the Court held that Exemption 6 "' . . . [was] intended to cover detailed government records on an individual which can be identified as applying to that individual.'"  Washington Post Co., 456 U.S. at 602 (quoting H.R. Rep. No. 1497, 89th Cong., 2d Sess. 11, reprinted in 1966 U.S. Code Cong. & Admin. News 2428).  Thus, all information that "applies to a particular individual" meets the threshold requirement for Exemption 6.  Washington Post Co., 456 U.S. at 599-603 (1982).  Moreover, the term "similar files" is to be interpreted broadly rather than narrowly.  Id. at 602 (citizenship information sought by a requester satisfies the "similar files" requirement of Exemption 6).

The Court has also emphasized that, "both the common law and the literal understanding of privacy encompasses the individual's control of information concerning his or her person." US Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 763 (1989).  Moreover, Exemption 6 protects personal information "even if it is not embarrassing or of an intimate nature." National Ass'n of Retired Federal Employees v. Horner, 879 F.2d 873, 874 (D.C. Cir. 1989).

The second step in the analysis is determining whether release of the information requested would result in a "clearly unwarranted invasion of personal privacy."  To make that determination, the court must balance the interests of protecting "an individual's private affairs from unnecessary public scrutiny" against the "public's right to governmental information."  Lepellitier, 164 F.3d at 46 (citations omitted).

In balancing the private and public interests involved, the Supreme Court has sharply limited the notion of "public interest" under the FOIA: "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light

15

on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" Lepellitier, 164 F.3d at 46 (quoting Dep't of Defense v. FLRA, 510 U.S. 487, 497 (1994)). Further, "something, even a modest privacy interest, outweighs nothing every time." National Ass'n of Retired Federal Employees, 879 F.2d at 879. Finally, it is important to note that the burden of establishing that disclosure would serve the public interest is on the requestor. Carter v. Dep't of Commerce, 830 F.2d 388, 390 n.8, 391 n. 13 (D.C. Cir. 1987).

### a-  (b)(6)-1     Names of FBI Special Agents and Support Personnel

The names of FBI Special Agents and support personnel involved in the criminal investigation of plaintiff and other individuals were withheld.[10]  Third Hardy Dec. ¶ 51, 52.  FBI Special Agents conduct investigations of individuals regarding their involvement in violations of various criminal statutes and national security cases.  Id.  Support personnel assist in, or have access to information involving these investigation.  Publicity regarding any particular investigation investigated by them could seriously impair their effectiveness in conducting future investigations. Id.  Further, it is possible for a person targeted by such law enforcement action to carry long-lasting grudges and to seek revenge on the individuals involved in these investigations.  Id.

Upon examination of whether there was any public interest that outweighs the substantial privacy interests of the FBI Special Agents and support employees, it becomes clear that there is no discernible public interest in the disclosure of their names.  In addition, this disclosure would not shed light on how the FBI performed its statutory duties.   Therefore, the FBI properly asserted Exemption (b)(6)-1 to protect the identities of these FBI employees.  Id.

### b-  (b)(6)-2     Names of Local Law Enforcement Officers

---

[10]  Exemption (b)(6)-1 was asserted to protect the names of FBI Special Agents and support personnel on Bey Pages: 1, 3, 14, 15, 17, 23, 28, 29, 34, 35, 38, 39, 44, 46-49, 51, 53, 54, 57, 87-90, 92, 94, 98, 100, 103-107 and 109.

The names of local law enforcement officers of the Lambert-St. Louis International Airport Police Department, the St. Louis Police Department, and the Oak Brook, Illinois Police Department also were withheld.[11]    Id. ¶ 54.    These law enforcement officers were acting in their official capacities when they assisted the FBI in the investigation of plaintiff and others in 1984, participated in the arrest of plaintiff and Doris Lewis Bey in 1984, and/or "assisted the FBI in the Obstruction of Justice investigation of plaintiff, Tonya Lewis Bey and other individuals in 1992 and 1993." Id. The disclosure of these individuals' names could subject them to unauthorized inquiries and/or harassment, and would be a clear invasion of their personal privacy.  Further, the disclosure would not shed light on how they or the FBI performed their duties.  Therefore, their substantial privacy interests are not outweighed by any public interest in disclosure.    Therefore, the FBI properly asserted Exemption (b)(6)-2 to protect the names of these local law enforcement officers.

### c-  (b)(6)-3    Names and Identifying Information of Individuals Who Provided Information and Cooperated with the FBI

Exemption (b)(6)-3 has been asserted to protect the names and identifying information of individuals who cooperated by providing information, to the FBI, in the Obstruction of Justice investigation of plaintiff and other individuals.[12]    Id. ¶ 56.  The identifying information includes their dates of birth, places of birth, Social Security numbers, telephone numbers, addresses, and the nature of their association with those being investigated.  Id.

Being able to obtain information from cooperating individuals is imperative to law

---

[11]  Exemption (b)(6)-2 was asserted to protect the names of local law enforcement officers on Bey Pages: 1-13 and 45.

[12]  Exemption (b)(6)-3 was asserted to protect the names and identifying information of individuals who assisted and cooperated with the FBI by providing information on Bey Pages: 14, 16, 17, 19-23, 25-28, 30-37, 39-44, 46-49, 51, 52, 54, 55, 57-86, 88-90, 92, 94, 96-98, 100, 102-106, 108 and 110-112.

enforcement agencies.  Id. ¶ 57.  However, a significant roadblock in successfully obtaining information is the fear of the cooperating individuals that their identities will be exposed.  Id.  Such exposure could result in harassment, intimidation, threats of legal or economic reprisal, or physical harm.  Individuals who agree to assist law enforcement in investigations have an interest in their having their identities protected.  By contrast, there is no strong public interest in having access to the names and identifying information of these individuals.  Therefore, the FBI properly withheld the names and identifying information of individuals who provided information in the course of the Obstruction of Justice investigation pursuant to Exemption (b)(6)-3.  Id.

### d- (b)(6)-4    Names and Identifying Information of Individuals who were of Investigative Interest to the FBI

Exemption (b)(6)-4 has been asserted to exempt from disclosure the names and/or identifying information of individuals in whom the FBI had an investigative interest during the Obstruction of Justice investigation.[13]  Id. ¶ 59.  The protected information about these individuals includes their names, telephone numbers, and the nature of their association with plaintiff and other individuals.  Id.  Because being linked with any law enforcement investigation often carries a strong negative connotation, the release of the identities of these individuals to the public in the context of a FBI criminal investigation could subject them to harassment or embarrassment, and would severely infringe upon their personal privacy interests.  Id.

In balancing their substantial privacy interests against the public interest in disclosure, there is no identifiable, legitimate public interest in release of this information.  Therefore, the FBI properly withheld the names and identifying information of these individuals pursuant to Exemption

---

[13]    Exemption (b)(6)-4 was asserted to protect the names and identifying information of individuals who were of investigative interest to the FBI on Bey Pages: 14, 16, 19-23, 25-27, 30-33, 36, 37, 40-45, 58-67, 69-79, 81-86, 88-90, 92, 94, 98 and 110.

(b)(6)-4.  Id. ¶ 60.

### e- (b)(6)-5   Names and Identifying Information of Individuals who are Merely Mentioned in FBI Investigative Records

Exemption (b)(6)-5 has been asserted to exempt from disclosure the names and other identifying information of individuals who were merely mentioned in these investigative records.[14] Id. ¶ 61.  The identifying information about these individuals includes their names, addresses, telephone numbers, and nature of their association with plaintiff and other individuals.  Id.  To release this information would not shed any light on the FBI's performance of its duties, but could cause unsolicited and unnecessary attention to be focused on these individuals and/or their family members by casting them in an unfavorable or negative light.  Id.

When balancing these individual's substantial privacy interests against the public interest in disclosure, it is difficult to identify any legitimate public interest in release of this information.  Accordingly, pursuant to Exemption (b)(6)-5, the FBI properly withheld the names and identifying information of these individuals who merely were mentioned in these FBI investigative records.

### I.   The FBI Properly Applied FOIA Exemption (b)(7)- Unwanted Invasion of Personal Privacy

Title 5, United States Code, Section 552(b)(7) ("Exemption (b)(7)") of the FOIA exempts from mandatory disclosure information that has been compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C); see Nation Magazine v. US Customs Service., 71 F.3d 885, 896 (D.C. Cir. 1995); SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1206 (D.C. Cir. 1991).[15]

---

[14]   Exemption (b)(6)-5 was asserted to protect the names and identifying information of individuals who are merely mentioned in these FBI investigative records on Bey Pages: 1, 2, 4-13, 19-23, 40-43, 59-67, 70, 72, 77, 79, 82 and 86.

[15]  In relevant part, Exemption 7(C) provides:
    (7)  records or information compiled for law enforcement purposes, but only to the extent

Applying Exemption 7(C) requires a multi-step analysis.  The first step is determining whether the information has been compiled for a "law enforcement purpose."  The term "law enforcement purpose" includes enforcement of civil and criminal statutes, as well as those statutes authorizing administrative (i.e., regulatory) proceedings.  Center for National Policy Review v. Weinberger, 502 F.2d 373 (D.C. Cir. 1974).[16]

The next step is to determine if there is a privacy interest.  A privacy interest sufficient to justify application of Exemption 7(C) has been found to exist in a wide variety of circumstances. See Reporters Committee, 489 U.S. 749 (1989) (subject of "rap sheets" has privacy interest outweighing public interest); Computer Prof'ls for Social Responsibility v. US Secret Serv., 72 F.3d 897, 904 (D.C. Cir. 1996) (the identities of suspects and witnesses who are identified in agency records in connection with law enforcement investigations withheld); Davis v. U.S. Dept. of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992) (privacy interest in confidential informant's testimony properly withheld); Lesar v. US Dep't of Justice, 636 F.2d 472, 487-488 (D.C. Cir. 1980) (convicted defendants and the names of law enforcement officers who work on criminal investigations); Nation Magazine 71 F.3d at 894 (subjects of law enforcement investigations have protectable privacy interest); Farese v. US Dep't of Justice, 683 F. Supp. 273, 275 (D.D.C. 1987) (withheld identity of individuals who provide information to law enforcement authorities).

---

that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy. . . .
5 U.S.C. § 552(b)(7)(C).

[16]Here, the records at issue were compiled during the course of two criminal investigations of plaintiff, Tonya Lewis Bey and other individuals.  "The FBI ha[d] jurisdiction to conduct these types of federal law enforcement investigations pursuant to 21 U.S.C. § 801 et seq. (the Comprehensive Drug Abuse Prevention and Control Act of 1970, also referred to as the Controlled Substances Act), 21 U.S.C. § 841 (Manufacture and Distribution of a Controlled Substance) and 18 U.S.C. §§ 1503 - 1515 (Obstruction of Justice)."  Third Hardy Dec. ¶ 65.

Once a privacy interest has been established, it must be balanced against the public interest, if there is any, that would be served by disclosure.  <u>Albuquerque Publishing Co. v. US Dep't of Justice</u>, 726 F. Supp 851, 855 (D.D.C. 1989).  As with Exemption 6, the public interest in disclosure is limited to the FOIA's core purpose of "shed[ing] light on an agency's performance of its statutory duties."  <u>Reporters Committee</u>, 489 U.S. at 773 (the public interest is "not fostered by disclosure of information about private citizens that is accumulated in various government files but that reveals little or nothing about an agency's own conduct.").[17]  Information that does not *directly* reveal the operations or activities of the Agency falls outside the ambit of the public interest that FOIA was enacted to serve.  <u>Id</u>. at 775.  The requester's burden is made even heavier by the requirement that the public interest be both significant and compelling in order to overcome legitimate privacy interests.  <u>See</u> <u>Senate of Puerto Rico v. US Dep't of Justice</u>, 823 F.2d 574, 588 (D.C. Cir. 1987); <u>Stone v. FBI</u>, 727 F. Supp. 662, 667-69 (D.D.C. 1990).

### a-  <u>(b)(7)(C)-1</u>    <u>Names of FBI Special Agents and Support Personnel</u>

The FBI asserted Exemption (b)(7)(C)-1 to exempt from disclosure the names of FBI Special Agents and support personnel who were involved in activities surrounding the criminal investigations of plaintiff and other individuals.[18]  Third Hardy Dec. ¶ 69.  These individuals have a privacy interest in their names not being disclosed to the public.  Such disclosure could not only impair their effectiveness in conducting future investigations, but could subject them to harassment

---

[17]Exemption 7(C) is much broader than Exemption 6.  As explained in <u>Favish</u>, the reasons surrounding the more expansive nature of privacy information exempt from disclosure under Exemption 7(C) is found in the history and language of the statute.  <u>See</u> <u>Favish</u> 124 S.Ct. at 1577.

[18]  Exemption (b)(7)(C)-1 was asserted to protect the names of FBI Special Agents and support personnel on Bey Pages: 1, 3, 14, 15, 17, 23, 28, 29, 34, 35, 38, 39, 44, 46-49, 51, 53, 54, 57, 87-90, 92, 94, 98, 100, 103-107 and 109.

or worse. In addition, the disclosure of their names would not shed light upon how the FBI performed its statutory duties. Therefore, the FBI properly asserted Exemption (b)(7)(C)-1 to protect this information from disclosure. [19]

### b- (b)(7)(C)-2    Names of Local Law Enforcement Officers

The FBI asserted Exemption (b)(7)(C)-2 to exempt from disclosure the names of local law enforcement officers of the Lambert-St. Louis International Airport Police Department, the St. Louis Police Department and the Oak Brook, Illinois Police Department.[20] Id. ¶ 72. These law enforcement officers assisted in FBI in the arrests and investigation of plaintiff and other individuals. Id. These local law enforcement officers also have a privacy interest in their names not being disclosed to the public. Disclosure of their names could subject them to unauthorized inquiries and/or harassment. In addition, this disclosure would not demonstrate how the FBI performed its statutory duties. Therefore, the FBI properly balanced the privacy and public interests and asserted Exemption (b)(7)(C)-2 to withhold this information. Id.

### c- (b)(7)(C)-3    Names and Identifying Information of Individuals Who Provided Information and Cooperated with the FBI

The FBI asserted Exemption (b)(7)(C)-3 to exempt from disclosure the names and identifying information of individuals who assisted the FBI by providing information during the Obstruction of Justice investigation of plaintiff, Tonya Lewis Bey and other individuals.[21] Id. ¶ 74. The identifying

---

[19]Although some time has passed since the investigation of plaintiff and other individuals for federal narcotics violations and obstruction of justice, the privacy interests are as strong now as they were when the records were created. Third Hardy Dec. ¶ 68.

[20] Exemption (b)(7)(C)-2 was asserted to protect the names of local law enforcement officers on Bey Pages: 1-13 and 45.

[21] Exemption (b)(7)(C)-3 was asserted to protect the names and identifying information of individuals who assisted and cooperated with the FBI by providing information on Bey Pages:

information included these individuals' names, dates of birth, places of birth, Social Security numbers, telephone numbers, addresses, and the nature of their association with plaintiff and other others.  Id.

Individuals who cooperate with law enforcement are fearful that they will be subjected to harm if their identities are disclosed.  Id.  Law enforcement must seek to protect their identities in order to continue to gain valuable information for their investigations.  These individuals' privacy interests clearly outweigh any public interest in disclosure in their names or identifying information.  Therefore, this information was properly withheld this information pursuant to Exemption (b)(7)(C)-3.  Id.

### d-  (b)(7)(C)-4    Names and Identifying Information of Individuals who were of Investigative Interest to the FBI

The FBI asserted Exemption (b)(7)(C)-4 to exempt from disclosure the names and identifying information of  individuals in whom the FBI had an investigative interest in during the Obstruction of Justice investigation.[22]  Id. ¶ 77.  The protected information included their names, Social Security numbers, addresses, telephone numbers, and the nature of their association with plaintiff and other individuals.  Id.  The disclosure of the identities of these individuals, in the context of a FBI criminal investigation, could subject the individuals to harassment, embarrassment and/or unwanted public attention.  Id.  Upon balancing their privacy interests against the public interest in disclosure, the FBI properly withheld their names and identifying information pursuant to Exemption (b)(7)(C)-4.

---

14, 16, 17, 19-23, 25-28, 30-37, 39-44, 46-49, 51, 52, 54, 55, 57-86, 88-90, 92, 94, 96-98, 100, 102-106, 108 and 110-112.

[22]    Exemption (b)(7)(C)-4 was asserted to protect the names and identifying information of individuals who were of investigative interest to the FBI on Bey Pages: 14, 16, 19-23, 25-27, 30-33, 36, 37, 40-45, 58-67, 69-79, 81-86, 88-90, 92, 94, 98 and 110.

###### e- (b)(7)(C)-5  Names and Identifying Information of Individuals who were Merely Mentioned in FBI Investigative Records

The FBI asserted Exemption (b)(7)(C)-5 to exempt from disclosure the names and identifying information of individuals who were merely mentioned in these FBI investigative records.[23]  Id. ¶ 79.  The protected information includes their names, telephone numbers, and the nature of their association with plaintiff and other individuals.  Id.  The mention of these individuals' names in the context of a FBI criminal investigation could cast them in an unfavorable or negative light if released to the public.  Id.  Moreover, the release would not shed any light on the FBI's performance of its statutory duties with respect to these criminal investigations.  Id.

Upon balancing these individuals' substantial privacy interests against the public interest in disclosure, there is no legitimate public interest in the release of this identifying information.  Id. ¶ 84.  Therefore, pursuant to Exemption (b)(7)(C)-5, the FBI properly withheld the names and identifying information of these individuals.  Id.

### J. The FBI Properly Applied FOIA Exemption (b)(7)(D) - Confidential Source Material

Title 5, United States Code, Section 552 (b)(7)(D) ("Exemption (b)(7)(D)") provides protection for

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency

---

[23]  Exemption (b)(7)(C)-5 was asserted to protect the names and identifying information of individuals who are merely mentioned in these FBI investigative records on Bey Pages: 1, 2, 4-13, 19-23, 40-43, 59-67, 70, 72, 77, 79, 82 and 86.

> conducting lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 522(b)(7)(D).

It is beyond dispute that confidential sources who speak with either express or implied assurances of confidentiality should have their identities protected. See Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995); Rosenfeld v. US Dep't of Justice, 57 F.3d 803, 814 (9th Cir. 1995); Buhovecky v. US Dep't of Justice, 700 F.Supp. 566, 571 (D.D.C. 1988). Releasing the information provided by these sources could likely reveal their identities. As a result, sources could be eliminated as a future means of obtaining potentially valuable information. Id. In addition, when the identity of one source is revealed, it has a chilling effect on the activities of other sources. Id. Moreover, Exemption 7(D) was crafted to "prevent the FOIA from causing the 'drying up' of sources of information in criminal investigations, e.g., Shaw v. FBI, 749 F.2d 58, 61 (D.C. Cir. 1984), and to prevent interference with the cooperative arrangement between individual sources of information vital to the effective functioning of law enforcement activities. See e.g., Lesar v. US Dep't of Justice, 636 F.2d at 91.

### a- (b)(7)(D)-2 Names and Identifying Information of Individuals Who Provided Information and Cooperated with the FBI Under an Express Assurance of Confidentiality

The FBI asserted Exemption (b)(7)(D)-2 to exempt from disclosure the names and identifying information of individuals who provided information to the FBI in the Obstruction of Justice investigation of plaintiff, Tonya Lewis Bey and other individuals.[24] Third Hardy Dec. ¶ 85. This

---

[24] Exemption (b)(7)(D)-2 was asserted to protect the names and identifying information of individuals who provided information and cooperated with the FBI under an express assurance of confidentiality on Bey Pages: 14, 16, 17, 19-23, 25-28, 30-37, 39-44, 46-49, 51, 52, 54, 55, 57-86, 88-90, 92, 94, 96-98, 100, 102-106, 108 and 110-112.

information allowed the FBI to electronically record telephone conversations with the subjects of the investigation. Id. These persons specifically requested that their identities not be divulged outside the FBI, and express assurances of confidentiality were granted. Id. "Within this investigation, there is a notation on BEY Pages 33 and 34 that under no circumstances should the fact that one of these individuals is cooperating with the FBI be revealed to anyone outside the FBI[,] and that the identity of this cooperating individual should therefore be protected from public acknowledgment." Id.

The FBI has protected the identities of these cooperating individuals as well as the specific information provided by them which could reveal their identities to persons who are knowledgeable of this investigation. Id. ¶ 86. "Given the violent nature of plaintiff and his associates, who have been convicted of narcotics trafficking and murder, disclosure of the identities of these individuals who provided valuable assistance to the FBI could subject them to possible violent reprisal." Id. Clearly, these individuals' privacy interests are not outweighed by any legitimate public interest in the disclosure of this information. Therefore, their identities and any information which could be used to identify them was properly withheld from disclosure pursuant to Exemption (b)(7)(D)-1. Id.

**K. Segregability**

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte." Trans-Pacific Policing Agreement v. U.S. Customs Service, 177 F.3d 1022, 1028 (D.C. Cir. 1999). FOIA requires that, if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); Mead Data Cent., Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).

26

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements." Mead Data, 566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. Id. All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." Mead Data, 566 F.2d at 261, n.55.

The FBI has clearly demonstrated that it processed and released all reasonably segregable information to plaintiff unless such release "could reasonably be expected to impede the effectiveness of the FBI's internal law enforcement procedures; cause unwarranted invasions of the privacy interests of third party individuals; and disclose the identities of confidential sources of the FBI.." Id. ¶ 87. Accordingly, the FBI has released to plaintiff all reasonably segregable, nonexempt information in this FOIPA request. Id.

---

27

## III.  CONCLUSION

As set forth above, the FBI has demonstrated that it responded properly to Plaintiff's FOIA requests, releasing to him all reasonably segregable information.  Accordingly, defendant respectfully requests that its motion for summary judgment be granted.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney

_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____
MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
501 Third Street, N.W., Fourth Floor
Washington, D.C.  20530
(202) 514-6531

28

## CERTIFICATE OF SERVICE

  I HEREBY CERTIFY that, on this _____ day of May, 2006, the foregoing, and the attached

proposed Order, were mailed postage prepaid to:

   Jerry Lewis-Bey
   22328-044
   Edgefield Federal Correctional Institution
   P.O. Box 725
   Edgefield, South Carolina 29824

            _____
            MARIAN L. BORUM
            Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
**JERRY LEWIS BEY,**                      )
                                          )
   **Plaintiff,**           )
                                          )    **Civil Action No. 05-1076 (JGP)**
     **v.**        )
                                          )
**U.S. DEPARTMENT OF JUSTICE,**           )
                                          )
   **Defendant.**            )
                                          )
_____)

_____**ORDER**

     Upon consideration of defendant's motion for summary judgment, of all the papers

filed in support of and in opposition to that motion, and of the entire record, and it appearing to the

Court that the granting of defendant's motion would be just and proper, it is by the Court this ____

day of _____, 2006,

     ORDERED that defendant's motion for summary judgment be, and it hereby is,

granted;

     ORDERED that this case be, and it is, dismissed with prejudice.


                        _____
                        UNITED STATES DISTRICT COURT

Copies to:

Marian L. Borum
Assistant United States Attorney
501 Third Street, Fourth Floor
Washington, D.C. 20530
(202) 514-6531

Jerry Lewis-Bey
22328-044
Edgefield Federal Correctional Institution
P.O. Box 725
Edgefield, South Carolina 29824