UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JERRY LEWIS BEY, | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action Number |
| v. | ) | 05-1076 (JPG) |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| Defendant. | ) | |

## THIRD DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)    I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate, at various commands and routinely worked with FOIA matters. I am also an attorney, and have been licensed to practice law in the State of Texas since 1980.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately 224 employees who staff a total of ten (10) units and a field operational service center unit whose

collective mission is to effectively plan, develop, direct and manage responses to requests for

access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order

12958, as amended; Presidential, Attorney General and FBI policies and procedures; judicial

decisions and other Presidential and Congressional directives.   The statements contained in this

declaration are based upon my personal knowledge, upon information provided to me in my

official capacity, and upon conclusions and determinations reached and made in accordance

therewith.

(3)    Due to the nature of my official duties, I am familiar with the procedures followed

by the FBI in responding to requests for information from its files pursuant to the provisions of

the FOIA, 5 U.S.C. § 552, and the Privacy Act (PA) of 1974, 5 U.S.C. § 552a, collectively

referred to as FOIPA.  Specifically, I am aware of the treatment which has been afforded the

three FOIPA requests of plaintiff, Jerry Lewis Bey, which are at issue in this litigation.  The first

FOIPA request of plaintiff seeks access to certain telephone toll records for two telephone

numbers that were issued to him, which he maintains were obtained by the FBI and filed in St.

Louis Office file number 245B-SL-5.  The second FOIPA request of plaintiff seeks access to all

records concerning his ex-wife Doris Lewis Bey which are contained in St. Louis Office file

number 245B-SL-5.  The third FOIPA request of plaintiff seeks access to all records concerning

his ex-wife Tonya Lewis Bey, also known as Tonya Timmons, which are contained in

Springfield Office file number 72-SI-46052.  In addition, I am aware of the documents

concerning this litigation which have been filed with this Court, including Plaintiff's Initial

Complaint dated April 6, 2005; Plaintiff's Amended Complaint dated April 18, 2005; the

Declaration of David Hardy dated October 25, 2005; Defendant's Motion for Summary

Judgment dated October 25, 2005; and Plaintiff's Motion in Opposition to Summary Judgment

dated November 12, 2005.

(4)    This second declaration supplements, and hereby incorporates, the first declaration

of David M. Hardy dated October 25, 2005 ("First Hardy Declaration"), which contains

information concerning the handling of plaintiff's request, an explanation of the FBI's Central

Records System, a description of St. Louis file 245B-SL-5, descriptions of the document-by-

document reviews of this St. Louis file conducted at both the St. Louis Field Office and FBIHQ

in an unsuccessful attempt to locate the specific telephone toll records that plaintiff seeks, and an

explanation as to why these specific telephone toll records are not filed in this St. Louis file.

(5)    The purpose of this declaration is to provide the Court and the plaintiff with

information concerning the handling of plaintiff's two FOIPA requests for certain records

concerning his two ex-wives, detail the correspondence between plaintiff and the FBI concerning

these two FOIPA requests, provide information concerning the searches conducted for the

specific records concerning his two ex-wives, provide descriptions of these records concerning

his two ex-wives, and provide justifications for the FOIA and Privacy Act exemptions used to

withhold information in these records.  In accordance with Vaughn v. Rosen, 484 F.2d 820 (D.C.

Cir. 1973), this declaration, which is being submitted in support of defendant FBI's motion for

summary judgment, will provide the Court and plaintiff with an explanation for the procedures

used in searching, reviewing and processing of the FBI records responsive to plaintiff's two

FOIPA requests, and provide justifications for the withholding of certain information in these

-3-

records pursuant to Privacy Act Exemption (j)(2), 5 U.S.C. § 552(a) (j)(2), and FOIA

Exemptions (b)(2), (b)(6), (b)(7)(C), and (b)(7)(D), 5 U.S.C. § 552 (b)(2), (b)(6), (b)(7)(C) and

(b)(7)(D).

### CORRESPONDENCE PERTAINING TO PLAINTIFF'S FOIPA REQUESTS FOR SPECIFIC RECORDS CONCERNING HIS TWO EX-WIVES

(6)    Set forth below is a chronology and description of the pertinent correspondence

concerning plaintiff's' two FOIPA requests for specific records concerning his two ex-wives,

Doris Lewis Bey and Tonya Lewis Bey, also known as Tonya Timmons.  Copies of this

correspondence are attached hereto as **Exhibits A-X.**

### I.  Plaintiff's FOIPA Request for Records Concerning Doris Lewis Bey

(7)    By letter dated September 20, 2002, Doris Lewis Bey, whose maiden name is Doris

Franklin made a FOIPA request to FBIHQ on behalf of plaintiff for any information contained in

St. Louis Office file number 245-SL-5 pertaining to herself.  Enclosed was a United States

Department of Justice ("DOJ") Certification of Identity form dated September 23, 2002, signed

by Doris Lewis Bey and containing identification information about herself.  This form contained

authorization from Doris Lewis Bey to release information about herself to plaintiff.  This letter

with the enclosed form was mailed by plaintiff to the St. Louis FBI Field Office and was received

in that office on March 13, 2003.  **(See Exhibit A).**

(8)    By letter dated March 25, 2003, the St. Louis Field Office acknowledged receipt of

plaintiff's FOIPA request concerning Doris Lewis Bey and advised that a search of the manual

and automated indices to the Central Records System at the St. Louis Office had located records

responsive to his request.  Plaintiff was also advised that his FOIPA request had been referred to

FBIHQ for processing.  **(See Exhibit B).**

(9)    By letter dated May 2, 2003, plaintiff inquired of FBIHQ as to the status of his FOIPA  request concerning Doris Lewis Bey and enclosed a copy of the letter to him from the St. Louis Field Office dated March 25, 2003.  **(See Exhibit C).**

(10)    By letter dated May 8, 2003, FBIHQ advised plaintiff that a search of the automated indices to the Central Records System at FBIHQ had not located any main file records responsive to his FOIPA request concerning Doris Lewis Bey.  Plaintiff was also advised that his FOIPA request had been assigned FOIPA Request Number 976807.  In addition, plaintiff was advised of the procedure to appeal the results of this search of the Central Records System to the Department of Justice, Office of Information and Privacy ("DOJ/OIP").   **(See Exhibit D).**

(11)    By letter dated May 11, 2003, plaintiff inquired of FBIHQ as to the status of his FOIPA  request concerning Doris Lewis Bey.  **(See Exhibit E).**

(12)    By letter dated May 13, 2003, plaintiff acknowledged receipt of the letter to him from FBIHQ dated May 8, 2003, and advised FBIHQ that he had already written to the St. Louis Field Office for specific records concerning Doris Lewis Bey contained in St. Louis Office file number 245-SL-5.  Plaintiff also enclosed copies of the letter from the St. Louis Office dated March 25. 2003, and the letter from FBIHQ dated May 8, 2003.  **(See Exhibit F).**

(13)    By letter dated July 1, 2003, plaintiff inquired of the St. Louis Field Office as to the status of his FOIPA request concerning Doris Lewis Bey and enclosed a copy of the letter to him from the St. Louis Field Office dated March 25, 2003.  **(See Exhibit G).**

(14)    By letter dated July 15, 2003, FBIHQ made a release of records concerning Doris

-5-

Lewis Bey to plaintiff. Plaintiff was advised that 15 pages of documents were reviewed and 5

pages of documents were being released to him with certain information being exempt from

disclosure pursuant to Privacy Act Exemption (j)(2) and FOIA Exemptions (b)(7)(C) and

(b)(7)(D). Plaintiff was also advised that these records responsive to his request were designated

as Serials 70 and 71 of St. Louis Office file number 245-SL-5. In addition, plaintiff was advised

of the procedure to appeal any denials in this release of records to DOJ/OIP. **(See Exhibit H).**

(15)    By letter dated April 7, 2004, Doris Franklin, also known as Doris Lewis Bey,

requested that FBIHQ disclose to plaintiff all records maintained on her in St. Louis file 245B-5.

Ms. Franklin also enclosed a Certification of Identity form dated April 7, 2004, which was signed

by her and containing identification information about herself. This form also contained

authorization from Doris Franklin to release information about herself to plaintiff.

**(See Exhibit I).**

(16)    By letter dated July 21, 2004, plaintiff inquired of FBIHQ as to the status of his

FOIPA request concerning Doris Lewis Bey and enclosed copies of the letter from her to FBIHQ

dated April 7, 2004, and the signed Certification of Identity form dated April 7, 2004. **(See**

**Exhibit J).**

(17)    By letter dated September 20, 2004, plaintiff inquired of FBIHQ as to the status of

the FOIPA request concerning Doris Lewis Bey and enclosed copies of the letter from her to

FBIHQ dated April 7, 2004, and the signed Certification of Identity form dated April 7, 2004.

**(See Exhibit K).**

(18)    By letter dated November 20, 2004, plaintiff inquired of FBIHQ as to the status of

the FOIPA request concerning Doris Lewis Bey and enclosed copies of his letter dated

September 20, 2004, the letter from her to FBIHQ dated April 7, 2004, and the signed

Certification of Identity form dated April 7, 2004.  **(See Exhibit L).**

### II.  Plaintiff's FOIPA Request for Records Concerning Tonya Lewis Bey, also known as Tonya Timmons

(19)    By letter dated July 6, 2003, plaintiff made a Freedom of Information-Privacy Acts

(FOIPA) request to the FBI Field Office in Springfield, Illinois, for all information contained in

Springfield Office file number 72-SI-46052 pertaining to his ex-wife Tonya Lewis Bey.

Plaintiff also enclosed a Privacy Waiver and Certification of Identity form dated October 12,

2003, signed by Tonya Lewis Bey and containing identification information about her.  This form

also contained authorization from Tonya Lewis Bey to release information about her to plaintiff.

This form was returned to plaintiff by the Springfield Office with the notation that the signature

on the form was illegible and not acceptable.  **(See Exhibit M).**

(20)    By letter dated October 31, 2003, plaintiff advised the Springfield Office of his

new address at the Federal Correctional Institution at Edgefield, South Carolina, and inquired as

to the status of his FOIPA request for specific records concerning Tonya Lewis Bey.  **(See

Exhibit N).**

(21)    By letter dated November 19, 2003, FBIHQ advised plaintiff that his request letter

for specific records concerning Tonya Lewis Bey had been forwarded to FBIHQ by the

Springfield Office.  Plaintiff was also advised that before any action could be taken upon his

FOIPA request, it would be necessary for him to submit a signed privacy waiver from Tonya

Lewis Bey. FBIHQ also enclosed a Privacy Waiver and Certification of Identity form with this letter. (See Exhibit O).

(22)    By letter dated November 29, 2003, plaintiff again made a FOIPA request to the Springfield Office for all information contained in Springfield Office file number 72-SI-46052 pertaining to his ex-wife Tonya Lewis Bey. (See Exhibit P).

(23)    By letter dated December 16, 2003, plaintiff provided FBIHQ with a new Privacy Waiver and Certification of Identity form dated December 10, 2003, signed by Tonya Lewis Bey and containing identification information about her. This form also contained authorization from Tonya Lewis Bey to release information about her to plaintiff. Plaintiff also enclosed a statement by Tonya Lewis Bey in which she stated that her new name was Tonya Timmons and in which she authorized the release of information about herself to plaintiff. Plaintiff also enclosed photocopies of her Social Security Card, her Bank of America Check Card and her Georgia State Driver's License. In addition, plaintiff enclosed copies of his letter to the Springfield Office dated November 29, 2003, and his ex-wife's prior Privacy Waiver and Certification of Identity form dated October 12, 2003. (See Exhibit Q).

(24)    By letter dated January 13, 2004, FBIHQ acknowledged receipt of plaintiff's FOIPA request for specific records concerning Tonya Timmons, also known as Tonya Lewis Bey, and advised that it had been assigned FOIPA Request Number 989997. (See Exhibit R).

(25)    By letter dated February 17, 2004, FBIHQ made a release of records concerning Tonya Timmons, also known as Tonya Lewis Bey, to plaintiff. Plaintiff was advised that 100 pages of documents were reviewed and 79 pages of documents were being released to him with

certain information being exempt from disclosure pursuant to FOIA Exemptions (b)(2), (b)(7)(C), (b)(7)(D) and (b)(7)(F).[1]  Plaintiff was also advised of the procedure to appeal any denials in this release of records to DOJ/OIP.  (See **Exhibit S).**

(26)    By letter dated April 9, 2004, Tonya Timmons, also known as Tonya Lewis Bey, requested that FBIHQ disclose to plaintiff all records maintained on herself in St. Louis file 245B-5.  Ms. Timmons also enclosed a signed Privacy Waiver and Certification of Identity form dated April 9, 2004, and photocopies of her Social Security Card, her Bank of America Check Card and her Georgia State Driver's License.  (See **Exhibit T).**

(27)    By letter dated May 3, 2004, plaintiff advised FBIHQ that his ex-wife Tonya Lewis Bey had submitted a FOIPA request to FBIHQ by letter dated April 9, 2004, for any information about herself in St. Louis Office file number 245-SL-5.  Plaintiff also advised that his ex-wife was also known as Tonya Brown.  Plaintiff enclosed copies of her letter dated April 9, 2004, her signed Certification of Identity form dated April 9, 2004, and photocopies of her Bank of America Check Card and her Georgia State Driver's License.  (See **Exhibit U).**

(28)    By letter dated July 21, 2004, plaintiff inquired of FBIHQ as to the status of his FOIPA request concerning Tonya Timmons, also known as Tonya Lewis Bey.  (See **Exhibit V).**

(29)    By letter dated September 20, 2004, plaintiff inquired of FBIHQ as to the status of his FOIPA request concerning Tonya Timmons, also known as Tonya Lewis Bey and enclosed copies of his letter to FBIHQ dated May 3, 2004, the letter from her to FBIHQ dated April 9,

---

[1]  It should be noted that Privacy Act Exemption (j)(2) was accidently omitted and not cited in this letter.

2004, her signed Certification of Identity form dated April 9, 2004, and photocopies of her Bank of America Check Card and her Georgia State Driver's License. **(See Exhibit W).**

(30) By letter dated November 20, 2004, plaintiff inquired of FBIHQ as to the status of his FOIPA request concerning Tonya Timmons, also known as Tonya Lewis Bey and enclosed copies of his letter to FBIHQ dated September 20, 2004, his letter to FBIHQ dated May 3, 2004, the letter from her to FBIHQ dated April 9, 2004, her signed Certification of Identity form dated April 9, 2004, and photocopies of her Bank of America Check Card and her Georgia State Driver's License. **(See Exhibit X).**

## EXPLANATION OF THE CENTRAL RECORDS SYSTEM

(31) For a description and explanation of the Central Records System ("CRS"), which is utilized by the FBI to conduct searches in response to FOIA and Privacy Act requests, see Paragraphs 22 through 26 of the First Hardy Declaration. **(See First Hardy Declaration, Paragraphs 22 through 26).**

## SEARCHES FOR AND DESCRIPTION OF THE SPECIFIC RECORDS RESPONSIVE TO PLAINTIFF'S TWO FOIPA REQUESTS CONCERNING HIS TWO EX-WIVES

(32) In his request letter dated September 20, 2002, plaintiff limited the scope of his FOIPA request concerning Doris Lewis Bey to information concerning her that is contained in St. Louis Office file number 245-SL-5. **(See Exhibit A).**

(33) A search of the indices to the CRS at the St. Louis Office determined that Doris Lewis Bey is indexed in Serials 70 and 71 of St. Louis Office file number 245-SL-5 and these two serials were forwarded to FBIHQ for processing.

(34)    St. Louis Office file 245-SL-5 pertains to an FBI Narcotics investigation of plaintiff and several other individuals. This investigation is captioned "Jerry Lewis Bey; Vernon Whitlock, Jr.; the Moorish Science Temple of America, et. al; Narcotics Matter; Organized Crime Drug Enforcement Task Force Case" and was conducted by the Organized Crime Drug Enforcement Task Force, of which the St. Louis Field Office was a participant along with other federal law enforcement agencies (including the Drug Enforcement Administration and the Bureau of Alcohol, Tobacco and Firearms) and local law enforcement agencies (including the St. Louis Police Department). The FBI has jurisdiction over this type of law enforcement investigation pursuant to 21 U.S.C. § 801 et seq. (the Comprehensive Drug Abuse Prevention and Control Act of 1970, also referred to as the Controlled Substances Act) and 21 U.S.C. § 841 (Manufacture and Distribution of a Controlled Substance).

(35)    Serial 70 of this file pertains to information furnished to the FBI by the Lambert-St. Louis International Airport Police Department concerning the employment of Doris Lewis Bey at the Aeroplex Corporation at this airport in November, 1984. This local police department also advised that it had attempted to tow her car when it was parked in a reserved parking space at the airport, but were subsequently advised that she had the permission of this person to park in his reserved parking space. This serial consists of 2 pages of documents and all pages are now being released to plaintiff with certain information exempt from disclosure.

(36)    Serial 71 of this file pertains to information furnished to the FBI by the St. Louis Police Department concerning the arrests of plaintiff and Doris Lewis Bey on November 9, 1984, on the charges of General Peace Disturbance. The enclosure to this serial consists of a copy of a

-11-

report of the St. Louis Police Department concerning these arrests. This serial consists of 11 pages of documents and all pages are now being released to plaintiff with certain information exempt from disclosure.[2]

(37)    In his request letter dated November 29, 2003, plaintiff limited the scope of his FOIPA request concerning Tonya Lewis Bey, also known as Tonya Timmons, to information contained in Springfield Office file number 72-SI-46052. **(See Exhibit M).**

(38)    A search of the indices to the CRS at the Springfield Office determined that Tonya Lewis Bey, also known as Tonya Timmons, is indexed as a subject of Springfield Office file number 72-SI-46052 and this file was forwarded to FBIHQ for processing.

(39)    Springfield Office file 72-SI-46052 pertains to an FBI Obstruction of Justice investigation of plaintiff and Tonya Lewis Bey, also known as Tonya Timmons, that was conducted from January through August of 1993. The FBI has jurisdiction over this type of law enforcement investigation pursuant to 18 U.S.C. §§ 1503 - 1515 (Obstruction of Justice). This file consists of 99 pages of documents and all pages are now being released to plaintiff with certain information exempt from disclosure.

## EXPLANATION OF FORMAT UTILIZED FOR THE JUSTIFICATION OF DELETED MATERIAL

(40)    Pursuant to this litigation, the records responsive to plaintiff's two FOIPA requests

---

[2] Pursuant to this litigation, FBIHQ contacted the St. Louis Police Department concerning the possible release and/or withholding of their arrest report. The St. Louis Police Department advised that it is their policy to make available a complete copy, without any deletions of information, of any arrest report to the first party individual(s) who are the subject(s) of the report. Therefore, this St. Louis Police Department report concerning the arrests of plaintiff and Doris Lewis Bey is now being released to plaintiff in its entirety.

were reprocessed to achieve maximum disclosure. Certain information which was previously withheld from disclosure to plaintiff is now being released. In addition, the use of FOIA Exemption (b)(7)(F) to withhold information in these records has been withdrawn. However, it should be noted that the use of FOIA Exemption (b)(6) has been added to withhold from disclosure the information which is also being withheld from disclosure pursuant to FOIA Exemption (b)(7)(C).

(41)    Copies of the released pages as they are now being provided to plaintiff are attached as **Exhibit Y**. Each page has been consecutively numbered as "BEY-1" through "BEY-112" at the bottom of the pages. In addition, the 10 pages of documents withheld in their entirety have been replaced by a "deleted page information sheet," which identifies the applicable FOIA exemptions relied upon to withhold these 10 pages in their entirety, as well as the numbered pages that applied to these withheld documents. The exemptions asserted by the FBI as grounds of withholding documents in their entireties or in part are Privacy Act Exemption (j)(2), 5 U.S.C. §§ 552(a)(j)(2), and FOIA Exemptions (b)(2), (b)(6), (b)(7)C) and (b)(7)(D), 5 U.S.C. §§ 552(b)(2), (b)(6), (b)(7)(C) and (b)(7)(D).

(42)    A coded format is used in this case to assist the Court and plaintiff in reviewing the information withheld within the context of the documents themselves. Each instance of information withheld pursuant to the FOIA on the attached documents is accompanied by a coded designation that corresponds to the categories listed below. For example, if "(b)(7)(C)-1" appears on a document, the (b)(7)(C) designation refers to Exemption (b)(7)(C) of the FOIA concerning "Unwarranted Invasion of Privacy." The numerical designation (-1) following the

-13-

"(b)(7)(C)" narrows the main category to the more specific subcategory, "Names of FBI Special

Agents and Support Personnel."  Listed below are the categories used to explain the Privacy Act

and FOIA exemptions asserted to withhold protected material:

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **Category (j)(2)** | **LAW ENFORCEMENT RECORDS** |
| **Category (b)(2)** | **INTERNAL AGENCY PERSONNEL RULES AND PRACTICES** |
| **(b)(2)-1** | Internal FBI Telephone Numbers and Facsimile Numbers. |
| **Category (b)(6)** | **CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| **(b)(6)-1** | Names of FBI Special Agents and Support Personnel.  Cited in conjunction with (b)(7)(C)-1. |
| **(b)(6)-2** | Names of Local Law Enforcement Officers.  Cited in conjunction with (b)(7)(C)-2. |
| **(b)(6)-3** | Names and Identifying Information of Individuals who Provided Information and Cooperated with the FBI.  Cited in conjunction with (b)(7)(C)-3 and (b)(7)(D)-2. |
| **(b)(6)-4** | Names and Identifying Information of Individuals who are of Investigative Interest to the FBI.  Cited in conjunction with (b)(7)(C)-4. |
| **(b)(6)-5** | Names and Identifying Information of Individuals who are Merely Mentioned in FBI Records.  Cited in conjunction with (b)(7)(C)-5. |
| **Category (b)(7)(C)** | **UNWARRANTED INVASION OF PERSONAL PRIVACY** |
| **(b)(7)(C)-1** | Names of FBI Special Agents and Support Personnel.  Cited in conjunction with (b)(6)-1. |
| **(b)(7)(C)-2** | Names of Local Law Enforcement Officers.  Cited in conjunction with (b)(6)-2. |

| SUMMARY OF JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** | **INFORMATION WITHHELD** |
| **(b)(7)(C)-3** | Names and Identifying Information of Individuals who Provided Information and Cooperated with the FBI. Cited in conjunction with (b)(6)-3 and (b)(7)(D)-2. |
| **(b)(7)(C)-4** | Names and Identifying Information of Individuals who are of Investigative Interest to the FBI. Cited in conjunction with (b)(6)-4. |
| **(b)(7)(C)-5** | Names and Identifying Information of Individuals who are Merely Mentioned in FBI Records. Cited in conjunction with (b)(6)-5. |
| **Category (b)(7)(D)** | **CONFIDENTIAL SOURCE MATERIAL** |
| **(b)(7)(D)-1** | Names and Identifying Information of Individuals who Provided Information and Cooperated with the FBI under an Express Assurance of Confidentiality. Cited in conjunction with (b)(6)-3 and (b)(7)(C)-3. |

## PRIVACY ACT EXEMPTION (j)(2)

(43)    Subsection (j)(2) of the Privacy Act exempts from mandatory disclosure systems of records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals . . .".

(44)    The investigatory files and records at issue in this litigation are part of the FBI's CRS at the St. Louis Office and the Springfield Office and these records pertain to two criminal investigations conducted by the FBI of plaintiff and other individuals, including Tonya Lewis Bey, in the Obstruction of Justice investigation. Serials 70 and 71 of St. Louis Office file 245-SL-5 pertain to the FBI investigation of plaintiff and other individuals concerning their

criminal activities in the distribution of heroin and other controlled substances. The FBI has jurisdiction over this type of law enforcement investigation pursuant to 21 U.S.C. § 801 et seq. (the Comprehensive Drug Abuse Prevention and Control Act of 1970, also referred to as the Controlled Substances Act) and 21 U.S.C. § 841 (Manufacture and Distribution of a Controlled Substance). Springfield Office file 72-SI-46052 pertains to the FBI investigation of plaintiff and Tonya Lewis Bey, also known as Tonya Timmons, concerning their criminal activities in a potential obstruction of justice. The FBI has jurisdiction over this type of law enforcement investigation pursuant to 18 U.S.C. §§ 1503 - 1515 (Obstruction of Justice). Accordingly, these records are exempt from disclosure in their entirety under the Privacy Act, 5 U.S.C. § 552a(j)(2), in conjunction with 28 C.F.R. § 16.93 (2003). Although access to these records was denied under the Privacy Act, they have been processed under the access provisions of the FOIA.

## FOIA EXEMPTION (b)(2)
### INTERNAL AGENCY RULES AND PRACTICES

(45)    5 U.S.C. § 552 (b)(2) exempts from disclosure information "related solely to the internal personnel rules and practices of an agency." This exemption protects routine internal administrative matters and functions of the FBI which have no effect on the public at large. Disclosure of this information could impede the effectiveness of the FBI's internal law enforcement procedures and investigations. Moreover, Exemption (b)(2) also protects internal personnel rules and practices of the FBI where disclosure may risk circumvention of the law.

### (b)(2)-1        Internal FBI Telephone Numbers and Facsimile Numbers

(46)    Exemption (b)(2)-1 has been asserted to protect the business telephone number of a FBI Special Agent and the business facsimile number of FBI Special Agents and support

personnel who participated in these criminal investigations of plaintiff and other individuals.[3]

(47)    This FBI business telephone number and facsimile number relate directly to the internal practices of the FBI in that the first is used by a FBI Special Agent and the second by FBI Special Agents and support personnel during the performance of their investigative duties. Disclosure of the internal telephone number of a FBI Special Agent and the facsimile number of FBI Special Agents and support personnel could subject these individuals to harassing telephone calls which could disrupt official business by impeding the ability of these FBI employees to conduct and conclude law enforcement investigations in a timely manner.  In the current technological environment, it is now possible for persons so inclined to utilize an automated dialing system to repeatedly dial the same telephone numbers which would effectively render these telephones and facsimile machines useless to the FBI.   Release of routine internal administrative information such as the business telephone and facsimile numbers of FBI employees serves no public benefit, and there is no indication that there is a genuine public interest in the disclosure of this FBI internal telephone number and facsimile number. Accordingly, because this business telephone number and facsimile number are solely related to the FBI's internal practices, because disclosure would not serve any public benefit, and because disclosure could impede the FBI's effectiveness, the FBI has appropriately withheld this information from disclosure pursuant to FOIA Exemption (b)(2)-1.

_____

[3]  Exemption (b)(2)-1 was asserted to protect internal FBI business telephone and facsimile numbers on Bey Pages: 20, 21, 34 and 49.

**FOIA EXEMPTION (b)(6)**
**CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY**

(48)    5 U.S.C. § 552(b)(6) exempts from disclosure:

> personnel and medical files and similar files when the disclosure of such
> information would constitute a clearly unwarranted invasion of personal privacy.

(49)    When withholding information pursuant to this exemption, the FBI is required to

balance the privacy interests of the individuals mentioned in these records against any public

interest in disclosure.  In asserting this exemption, each item of information was examined to

determine the degree and nature of the privacy interest of every individual whose name and/or

identifying information appears in these records.  The public interest in disclosure of this

information is determined by whether the information in question would inform plaintiffs and the

general public about the FBI's performance of its mission to enforce federal criminal and national

security statutes and/or how the information would shed light on the FBI's performance of its

statutory duties.  In each instance where information was withheld, it was determined that

individual privacy rights outweighed the public interest.  The only recognized public interest is

that which sheds light on the operations and activities of the federal government and it was

determined that the release of the names and/or identifying information concerning the third party

individuals contained in these FBI records would not shed any light on how the FBI performed its

statutory investigative duties.  To reveal the names and/or identifying information of third party

individuals in the context of the records of these two FBI criminal investigations of plaintiff and

other individuals concerning the distribution of narcotics and potential obstruction of justice could

reasonably be expected to cause harassment, embarrassment and/or unsolicited publicity which

-18-

would constitute an unwarranted invasion of their personal privacy.

(50)    During the review of these records, the passage of time and its effect on the privacy interests of third party individuals was considered. It was determined that the privacy interests are as strong and pertinent now as when the records were created and that there is no public or historical interest in these records which would outweigh the privacy interests of these third party individuals.

### (b)(6)-1    Names of FBI Special Agents and Support Personnel

(51)    Exemption (b)(6)-1 has been asserted to exempt from disclosure the names of FBI Special Agents and support personnel who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in these criminal investigations of plaintiff and other individuals.[4] Publicity, adverse or otherwise, regarding any particular investigation conducted by FBI Special Agents may seriously impair their effectiveness in conducting future investigations. The privacy consideration also protects FBI Special Agents from unnecessary, unofficial questioning as to the conduct of an investigation, whether or not they are currently employed by the FBI. FBI Special Agents conduct official inquiries into violations of various criminal statutes and national security cases. They come into contact with all strata of society and conduct searches and make arrests, both of which result in reasonable, but nonetheless serious disturbances in the lives of individuals. It is possible for a person targeted by such law enforcement action to carry a grudge which may last for years, and to seek revenge on the Special

---

[4] Exemption (b)(6)-1 was asserted to protect the names of FBI Special Agents and support personnel on Bey Pages: 1, 3, 14, 15, 17, 23, 28, 29, 34, 35, 38, 39, 44, 46-49, 51, 53, 54, 57, 87-90, 92, 94, 98, 100, 103-107 and 109.

Agents involved in these investigations. The publicity associated with the release of the name of a

FBI Special Agent in connection with a particular investigation could trigger hostility towards the

Special Agent by such persons. Accordingly, there is no legitimate public interest to be served in

the disclosure of the names of the FBI Special Agents in these records concerning these two

criminal investigations to the public.

(52)    The names of FBI support personnel have also been withheld pursuant to

Exemption (b)(6)-1. Support personnel are assigned to handle tasks relating to FBI investigations

and these individuals are in positions to access information concerning official law enforcement

investigations. They could therefore become targets of harassing inquiries for unauthorized

access to FBI investigations if their identities were released. Accordingly, there is no legitimate

public interest to be served in releasing the names of FBI support personnel in these records

concerning these two criminal investigations to the public.

(53)    The FBI next examined the records at issue to determine whether there was any

public interest that outweighed the substantial privacy interests of the FBI SAs and support

employees. The FBI could not identify any discernible public interest in that the disclosure of the

names of FBI Special Agents and support employees would not demonstrate how the FBI

performed its statutory duties during the two criminal investigations of plaintiff and other

individuals. Thus, the FBI has properly asserted Exemption (b)(6)-1 to protect the identities of

these FBI employees.

### (b)(6)-2    Names of Local Law Enforcement Officers

(54)    Exemption (b)(6)-2 has been asserted to protect the names of local law enforcement

-20-

officers of the Lambert-St. Louis International Airport Police Department, the St. Louis Police Department, and the Oak Brook, Illinois Police Department.[5] These police officers acted in their official capacities when they assisted the FBI in the Narcotics investigation of plaintiff and other individuals in 1984 or assisted the FBI in the Obstruction of Justice investigation of plaintiff, Tonya Lewis Bey and other individuals in 1992 and 1993. The relevant inquiry here is whether public access to this information would violate a viable privacy interest of the subjects of such information. Disclosure of the identities of these local law enforcement officers could subject them to unauthorized inquiries and/or harassment that could not be anticipated by their assistance to the FBI and which would constitute an unwarranted invasion of their personal privacy. Furthermore, there is no legitimate public interest to be served in releasing the identities of these local law enforcement personnel. The rationale for protecting the identities of local law enforcement officers is identical to the rationale for protecting the identities of FBI employees.

(55)    The FBI next examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of these local law enforcement officers. The FBI could not identify any discernible public interest in that the disclosure of the names of these local law enforcement officers would not demonstrate how the FBI performed its statutory duties during the two criminal investigations of plaintiff and other individuals. Thus, the FBI has properly asserted Exemption (b)(6)-2 to protect the names of these local law enforcement officers.

---

[5] Exemption (b)(6)-2 was asserted to protect the names of local law enforcement officers on Bey Pages: 1-13 and 45.

**(b)(6)-3    Names and Identifying Information of Individuals Who Provided Information and Cooperated with the FBI**

(56)    Exemption (b)(6)-3 has been asserted to protect the names and identifying information of individuals who assisted and cooperated with the FBI by providing information in the Obstruction of Justice investigation.[6] These individuals provided information regarding their knowledge of potential criminal activities. In addition to their names, the other types of identifying information which was withheld includes their dates of birth, places of birth, Social Security numbers, telephone numbers, addresses, relationship of their association with plaintiff and other individuals, and other personal information.

(57)    Information provided by individuals during an interview is one of the most productive investigative tools utilized by law enforcement agencies. The largest roadblock in successfully obtaining the desired information through an interview is the fear by the interviewee of his or her identity possibly being exposed and, consequently, being harassed, intimidated or threatened with legal or economic reprisal, or possible physical harm. In order to surmount these obstacles, persons interviewed must be assured that their identities will be held in the strictest confidence by the FBI. The continued access to persons willing to honestly relate pertinent facts bearing upon a particular investigation outweighs any benefits derived from releasing the identities of these individuals. To release the identities of these individuals interviewed by the FBI would not only constitute an unwarranted invasion of their personal privacy, but could subject

---

[6] Exemption (b)(6)-3 was asserted to protect the names and identifying information of individuals who assisted and cooperated with the FBI by providing information on Bey Pages: 14, 16, 17, 19-23, 25-28, 30-37, 39-44, 46-49, 51, 52, 54, 55, 57-86, 88-90, 92, 94, 96-98, 100, 102-106, 108 and 110-112.

these individuals to harassment, embarrassment, intimidation, or result in undue public attention. Thus, the FBI determined that the disclosure of the names and identifying information of these individuals could reasonably be expected to constitute an unwarranted invasion of their personal privacy.

(58)     After identifying the substantial privacy interests of these individuals, the FBI balanced their interests against the public interest in disclosure.  The FBI could not identify any legitimate public interest in release of this identifying information since it would not shed any light on the operations and activities of the FBI in this Obstruction of Justice investigation. Accordingly, the FBI has properly withheld the names and identifying information of individuals who provide information and cooperated with the FBI pursuant to Exemption (b)(6)-3.

### <u>(b)(6)-4</u>     <u>Names and Identifying Information of Individuals who were of Investigative Interest to the FBI</u>

(59)     Exemption (b)(6)-4 has been asserted to exempt from disclosure the names and/or identifying information of third party individuals in whom the FBI had an investigative interest in the context of the Obstruction of Justice investigation.[7]  The protected personal information about these individuals includes their names, telephone numbers, relationship of their association with plaintiff and other individuals, and other personal information.  Being linked with any law enforcement investigation carries a strong negative connotation.  To release the identities of these individuals to the public in the context of a FBI criminal investigation could subject them to

---

[7]     Exemption (b)(6)-4 was asserted to protect the names and identifying information of individuals who were of investigative interest to the FBI on Bey Pages: 14, 16, 19-23, 25-27, 30-33, 36, 37, 40-45, 58-67, 69-79, 81-86, 88-90, 92, 94, 98 and 110.

harassment or embarrassment, as well as undue public attention. The personal privacy interests of these individuals would be severely infringed upon if their identities were released in the context of this Obstruction of Justice investigation as individuals of investigative interest to the FBI.

(60)    After identifying the substantial privacy interests of these individuals, the FBI balanced their interests against the public interest in disclosure. The FBI could not identify any legitimate public interest in release of this identifying information since it would not shed any light on the operations and activities of the FBI in this Obstruction of Justice investigation. Accordingly, the FBI has properly withheld the names and identifying information of individuals who are of investigative interest to the FBI pursuant to Exemption (b)(6)-4.

### (b)(6)-5   Names and Identifying Information of Individuals who are Merely Mentioned in FBI Investigative Records

(61)    Exemption (b)(6)-5 has been asserted to exempt from disclosure the names and other identifying information of individuals who are only incidentally mentioned in these investigative records.[8] The protected personal information about these individuals includes their names, addresses, telephone numbers, relationship of their association with plaintiff and other individuals, and other personal information. To release the identities of these third party individuals  who are merely mentioned in these two FBI criminal investigations would not shed any light on the FBI's performance of its statutory duties with respect to these two criminal investigations. However, the disclosure of their identities could cause unsolicited and

---

[8]    Exemption (b)(6)-5 was asserted to protect the names and identifying information of individuals who are merely mentioned in these FBI investigative records on Bey Pages: 1, 2, 4-13, 19-23, 40-43, 59-67, 70, 72, 77, 79, 82 and 86.

unnecessary attention to be focused on these individuals and/or their family members. The mention of their names in the context of a FBI criminal investigation could cast them in an unfavorable or negative light if released to the public. Thus, these individuals have a strong privacy interest in the protection of such personal information.

(62)    After identifying the substantial privacy interests of these individuals, the FBI balanced their interests against the public interest in disclosure. The FBI could not identify any legitimate public interest in release of this identifying information since it would not shed any light on the operations and activities of the FBI in the Narcotics investigation and the Obstruction of Justice investigation. Accordingly, the FBI has properly withheld the names and identifying information of third party individuals who are merely mentioned in these FBI investigative records pursuant to Exemption (b)(6)-5.

### FOIA EXEMPTION (b)(7)
### EXEMPTION (b)(7) THRESHOLD

(63)    Exemption (b)(7) of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in the subpart of the exemption. See 5 U.S.C. § 552(b)(7). In this case, the harm that could reasonably be expect to result from disclosure concerns the personal privacy of individuals and the identities of confidential sources of the FBI.

(64)    Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Law enforcement agencies such as the FBI must demonstrate that the records at issue

-25-

are related to the enforcement of federal laws and that the enforcement activity is within the law

enforcement duty of that agency.

(65)    The records at issue in this litigation were compiled during the course of two FBI

criminal investigations of plaintiff and other individuals, including Tonya Lewis Bey in the

Obstruction of Justice investigation, concerning their criminal activities in the distribution of

heroin and other controlled substances and potential obstruction of justice.  The FBI has

jurisdiction to conduct these types of federal law enforcement investigations pursuant to 21 U.S.C.

§ 801 et seq. (the Comprehensive Drug Abuse Prevention and Control Act of 1970, also referred

to as the Controlled Substances Act), 21 U.S.C. § 841 (Manufacture and Distribution of a

Controlled Substance) and 18 U.S.C. §§ 1503 - 1515 (Obstruction of Justice).  Accordingly, the

records at issue in this litigation readily meet the threshold requirement of Exemption (b)(7).  The

remaining inquiry is whether their disclosure "could reasonably be expected to constitute an

unwarranted invasion of personal privacy" or "disclose the identity of a confidential source."

### FOIA EXEMPTION (b)(7)(C)
### UNWARRANTED INVASION OF PERSONAL PRIVACY

(66)    5 U.S.C. § 552 (b)(7)(C) exempts from disclosure:

> records or information compiled for law enforcement purposes, but
> only to the extent that the production of such law enforcement
> records or information . . . could reasonably be expected to
> constitute an unwarranted invasion of personal privacy . . . .

(67)    In asserting this exemption, each piece of information was scrutinized to determine

the nature and strength of the privacy interest of any individual whose name and/or identifying

data appears in these records.  In withholding the information, the individual's privacy interest

-26-

was balanced against the public's interest in disclosure. In making this analysis, public interest

information was determined to be information which would shed light on the FBI's performance

of its statutory duties. The public interest in disclosure of this information is determined by

whether the information in question would inform plaintiff and the general public about the FBI's

performance of its mission to enforce federal criminal statutes and/or how the information would

shed light on the FBI's performance of its statutory duties. In each instance where information

was withheld, it was determined that individual privacy rights outweighed the public interest. The

only recognized public interest is that which sheds light on the operations and activities of the

federal government and it was determined that the release of the names and/or identifying

information concerning the third party individuals contained in these FBI records would not shed

any light on how the FBI performed its statutory investigative duties. To reveal the names and/or

identifying information of third party individuals in the context of the records of these two FBI

criminal investigations of plaintiff and other individuals concerning the distribution of narcotics

and potential obstruction of justice could reasonably be expected to cause harassment,

embarrassment, or unsolicited publicity which would constitute an unwarranted invasion of their

personal privacy.

(68)    During the review of these records, the passage of time and its effect on the privacy

interests of third party individuals was considered. It was determined that the privacy interests are

as strong and pertinent now as when the records were created and that there is no public or

historical interest in these records which would outweigh the privacy interests of these third party

individuals.

### (b)(7)(C)-1     Names of FBI Special Agents and Support Personnel

(69)    Exemption (b)(7)(C)-1 has been asserted to exempt from disclosure the names of

FBI Special Agents and support personnel who were responsible for conducting, supervising,

and/or maintaining the investigative activities reported in these criminal investigations of plaintiff

and other individuals.[9]  Publicity, adverse or otherwise, regarding any particular investigation

conducted by FBI Special Agents  may seriously impair their effectiveness in conducting future

investigations.  The privacy consideration also protects FBI Special Agents from unnecessary,

unofficial questioning as to the conduct of an investigation, whether or not they are currently

employed by the FBI.  FBI Special Agents conduct official inquiries into violations of various

criminal statutes and national security cases.  They come into contact with all strata of society and

conduct searches and make arrests, both of which result in reasonable, but nonetheless serious

disturbances in the lives of individuals.  It is possible for a person targeted by such law

enforcement action to carry a grudge which may last for years, and to seek revenge on the Special

Agents involved in these investigations.  The publicity associated with the release of the name of a

FBI Special Agent in connection with a particular investigation could trigger hostility towards the

Special Agent by such persons.  Accordingly, there is no legitimate public interest to be served in

the disclosure of the names of the FBI Special Agents in these records concerning these two

criminal investigations to the public.

(70)    The names of FBI support personnel have also been withheld pursuant to

---

[9]  Exemption (b)(7)(C)-1 was asserted to protect the names of FBI Special Agents and
support personnel on Bey Pages: 1, 3, 14, 15, 17, 23, 28, 29, 34, 35, 38, 39, 44, 46-49, 51, 53, 54,
57, 87-90, 92, 94, 98, 100, 103-107 and 109.

Exemption (b)(7)(C)-1. Support personnel are assigned to handle tasks relating to FBI investigations and these individuals are in positions to access information concerning official law enforcement investigations. They could therefore become targets of harassing inquiries for unauthorized access to FBI investigations if their identities were released. Accordingly, there is no legitimate public interest to be served in releasing the names of FBI support personnel in these records concerning these two criminal investigations to the public.

(71)    The FBI next examined the records at issue to determine whether there was any public interest that outweighed the substantial privacy interests of the FBI Special Agents and support personnel. The FBI could not identify any discernible public interest in that the disclosure of the names of FBI Special Agents and support personnel would not demonstrate how the FBI performed its statutory duties during the two criminal investigations of plaintiff and other individuals. Thus, the FBI has properly asserted Exemption (b)(7(C)-1 to protect the names of these FBI employees.

### (b)(7)(C)-2      Names of Local Law Enforcement Officers

(72)    Exemption (b)(7)(C)-2 has been asserted to exempt from disclosure the names of local law enforcement officers of the Lambert-St. Louis International Airport Police Department, the St. Louis Police Department and the Oak Brook, Illinois Police Department.[10] These police officers acted in their official capacities when they assisted the FBI in the Narcotics investigation of plaintiff and other individuals in 1984 or assisted the FBI in the Obstruction of Justice

---

[10] Exemption (b)(7)(C)-2 was asserted to protect the names of local law enforcement officers on Bey Pages: 1-13 and 45.

investigation of plaintiff, Tonya Lewis Bey and other individuals in 1992 and 1993. The relevant

inquiry here is whether public access to this information would violate a viable privacy interest of

the subjects of such information. Disclosure of the identities of these local law enforcement

officers could subject them to unauthorized inquiries and/or harassment that could not be

anticipated by their assistance to the FBI and which would constitute an unwarranted invasion of

their personal privacy. Furthermore, there is no legitimate public interest to be served in releasing

the identities of these local law enforcement personnel. The rationale for protecting the identities

of local law enforcement officers is identical to the rationale for protecting the identities of FBI

employees.

(73)    The FBI next examined the records at issue to determine whether there was any

public interest that outweighed the substantial privacy interests of these local law enforcement

officers. The FBI could not identify any discernible public interest in that the disclosure of the

names of these local law enforcement officers would not demonstrate how the FBI performed its

statutory duties during the two criminal investigations of plaintiff and other individuals. Thus, the

FBI has properly asserted Exemption (b)(7)(C)-2 to protect the names of these local law

enforcement officers.

### (b)(7)(C)-3   Names and Identifying Information of Individuals Who Provided Information and Cooperated with the FBI

(74)    Exemption (b)(7(C)-3 has been asserted to exempt from disclosure the names and

identifying information of individuals who assisted and cooperated with the FBI by providing

-30-

information in the Obstruction of Justice investigation.[11] These individuals provided information

regarding their knowledge of the potential criminal activities of plaintiff, Tonya Lewis Bey and

other individuals. In addition to their names, the other types of identifying information which was

withheld includes their dates of birth, places of birth, Social Security numbers, telephone

numbers, addresses, relationship of their association with plaintiff and other individuals, and other

personal information.

(75)  Information provided by individuals during an interview is one of the most

productive investigative tools utilized by law enforcement agencies. The largest roadblock in

successfully obtaining the desired information through an interview is the fear by the interviewee

of his or her identity possibly being exposed and, consequently, being harassed, intimidated or

threatened with legal or economic reprisal, or possible physical harm. In order to surmount these

obstacles, persons interviewed must be assured that their identities will be held in the strictest

confidence by the FBI. The continued access to persons willing to honestly relate pertinent facts

bearing upon a particular investigation outweighs any benefits derived from releasing the

identities of these individuals. To release the identities of these individuals interviewed by the

FBI would not only constitute an unwarranted invasion of their personal privacy, but could subject

these individuals to harassment, embarrassment, intimidation, or result in undue public attention.

Thus, the FBI determined that the disclosure of the names and identifying information of these

---

[11]  Exemption (b)(7)(C)-3 was asserted to protect the names and identifying information
of individuals who assisted and cooperated with the FBI by providing information on Bey Pages:
14, 16, 17, 19-23, 25-28, 30-37, 39-44, 46-49, 51, 52, 54, 55, 57-86, 88-90, 92, 94, 96-98, 100,
102-106, 108 and 110-112.

individuals could reasonably be expected to constitute an unwarranted invasion of their personal privacy.

(76)    After identifying the substantial privacy interests of these individuals, the FBI balanced their interests against the public interest in disclosure.  The FBI could not identify any legitimate public interest in release of this identifying information since it would not shed any light on the operations and activities of the FBI in this Obstruction of Justice investigation.  Accordingly, the FBI has properly withheld the names and identifying information of individuals who provided information and cooperated with the FBI pursuant to Exemption (b)(7)(C)-3.

### (b)(7)(C)-4    Names and Identifying Information of Individuals who were of Investigative Interest to the FBI

(77)    Exemption (b)(7)(C)-4 has been asserted to exempt from disclosure the names and identifying information of third party individuals in whom the FBI had an investigative interest in the context of the Obstruction of Justice investigation.[12]  The protected personal information about these individuals includes their names, Social Security numbers, addresses, telephone numbers, relationship of their association with plaintiff and other individuals, and other personal information.  Being linked with any law enforcement investigation carries a strong negative connotation.  To release the identities of these individuals to the public in the context of an FBI criminal investigation could subject them to harassment or embarrassment, as well as undue public attention.  The personal privacy interests of these individuals would be severely infringed

---

[12]    Exemption (b)(7)(C)-4 was asserted to protect the names and identifying information of individuals who were of investigative interest to the FBI on Bey Pages: 14, 16, 19-23, 25-27, 30-33, 36, 37, 40-45, 58-67, 69-79, 81-86, 88-90, 92, 94, 98 and 110.

upon if their identities were released in the context of this Obstruction of Justice investigation as individuals of investigative interest to the FBI.

(78)    After identifying the substantial privacy interests of these individuals, the FBI balanced their interests against the public interest in disclosure.  The FBI could not identify any legitimate public interest in release of this identifying information since it would not shed any light on the operations and activities of the FBI in this Obstruction of Justice investigation. Accordingly, the FBI has properly withheld the names and identifying information of individuals who were of investigative interest to the FBI pursuant to Exemption (b)(7)(C)-4.

### (b)(7)(C)-5    Names and Identifying Information of Individuals who are Merely Mentioned in FBI Investigative Records

(79)    Exemption (b)(7)(C)-5 has been asserted to exempt from disclosure the names and other identifying information of individuals who are only incidentally mentioned in these FBI investigative records.[13]  The protected personal information about these individuals includes their names, telephone numbers, relationship of their association with plaintiff and other individuals, and other personal information. To release the identities of these third party individuals  who are merely mentioned in these two FBI criminal investigations would not shed any light on the FBI's performance of its statutory duties with respect to these two criminal investigations.  However, the disclosure of their identities could cause unsolicited and unnecessary attention to be focused on these individuals and/or their family members.  The mention of their names in the context of a

---

[13]  Exemption (b)(7)(C)-5 was asserted to protect the names and identifying information of individuals who are merely mentioned in these FBI investigative records on Bey Pages: 1, 2, 4-13, 19-23, 40-43, 59-67, 70, 72, 77, 79, 82 and 86.

FBI criminal investigation could cast them in an unfavorable or negative light if released to the public.  Thus, these individuals have a strong privacy interest in the protection of such personal information.

(80)    After identifying the substantial privacy interests of these individuals, the FBI balanced their interests against the public interest in disclosure.  The FBI could not identify any legitimate public interest in release of this identifying information since it would not shed any light on the operations and activities of the FBI in the course of the Narcotics investigation and the Obstruction of Justice investigation.  Accordingly, the FBI has properly withheld the names and identifying information of third party individuals who are merely mentioned in these FBI investigative records pursuant to Exemption (b)(7)(C)-5.

### FOIA EXEMPTION (b)(7)(D)
### CONFIDENTIAL SOURCE MATERIAL

(81)   5 U.S.C. § 552(b)(7)(D) provides protection for

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to disclose the identity of a confidential source, including a State, local or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting lawful national security intelligence investigation, information furnished by a confidential source.

(82)    Numerous confidential sources report to the FBI on a regular basis and are "informants" within the common meaning of the term.  These sources provide information under a variety of circumstances, including either an express or an implied assurance of confidentiality.

-34-

Releasing the information provided by these sources may likely reveal the identities of these confidential sources. The release of a source's identity would forever eliminate that source as a future means of obtaining information. In addition, when the identity of one source is revealed, that revelation has a chilling effect on the activities and cooperation of other sources. It is only with the understanding of complete confidentiality (whether express or implied) that the aid of such sources can be enlisted, and only through this confidence that these sources can be persuaded to continue providing valuable assistance in the future.

(83)    The FBI has learned through experience that individuals who assist, cooperate with, and provide information to the FBI  must be free to do so without fear of reprisal.  The FBI has also learned that individuals who provide information to the FBI must be free to furnish that information with complete candor and without the understandable tendency to hedge or withhold information because of  fear that their names or their cooperation with the FBI will later be made public.  Individuals who provide information to the FBI should be secure in the knowledge that their assistance and their identities will be held in confidence.

(84)    It is only with the understanding of complete confidentiality that the assistance of such cooperating individuals can be maintained, and only through this assurance of confidentiality that these individuals can be persuaded to continue providing valuable assistance in the future. There is no legitimate public interest to be served in revealing the identities of the individuals who cooperated with the FBI by providing information in the Obstruction of Justice investigation. Therefore, the identities of these confidential sources, as well as any specific information provided by them which would identify them, have been withheld from disclosure pursuant to Exemption

-35-

(b)(7)(D).

### <u>(b)(7)(D)-1    Names and Identifying Information of Individuals who Provided Information and Cooperated with the FBI Under an Express Assurance of Confidentiality</u>

(85)    Exemption (b)(7)(D)-1 has been asserted to exempt from disclosure the names

and identifying information of individuals who provided information and cooperated with the FBI

in the Obstruction of Justice investigation of plaintiff, Tonya Lewis Bey and other individuals

under an express assurance of confidentiality.[14] These individuals provided valuable information

concerning the potentially criminal activities of plaintiff, Tonya Lewis Bey and their associates and

allowed the FBI to electronically record their telephone conversations with the subjects of the

Obstruction of Justice investigation.  These persons specifically requested that their identities not

be divulged outside the FBI.  The requests of these individuals for an express assurance of

confidentiality was thereby granted by the FBI and these individuals were promised that their

identities would not be disclosed outside the FBI.  Within this investigation, there is a notation on

BEY Pages 33 and 34 that under no circumstances should the fact that one of these individuals is

cooperating with the FBI be revealed to anyone outside the FBI and that the identity of this

cooperating individual should therefore be protected from public acknowledgment.

(86)    In this instance, the FBI has protected both the identities of these cooperating

individuals and any specific information provided by then which could possibly reveal their

---

[14] Exemption (b)(7)(D)-1 was asserted to protect the names and identifying information of individuals who provided information and cooperated with the FBI under an express assurance of confidentiality on Bey Pages: 14, 16, 17, 19-23, 25-28, 30-37, 39-44, 46-49, 51, 52, 54, 55, 57-86, 88-90, 92, 94, 96-98, 100, 102-106, 108 and 110-112.

identities to persons who are knowledgeable of this investigation. Given the violent nature of

plaintiff and his associates, who have been convicted of narcotics trafficking and murder,

disclosure of the identities of these individuals who provided valuable assistance to the FBI would

subject them to probable violent reprisal. In addition, disclosure of the identities of persons

interviewed under such express assurances of confidentiality would have a chilling effect on the

activities and cooperation of other current and future sources of information. The FBI has found

through experience that it is only with the understanding of complete confidentiality that the

assistance and cooperation of such persons can be enlisted and only through this assurance that

these individuals can be persuaded to continue providing valuable assistance in the future. There is

no legitimate public interest to be served in disclosing the identities of these individuals who

cooperated with the FBI by providing information about the potentially criminal activities of

plaintiff, Tonya Lewis Bey and other individuals. Therefore, the identities of these cooperating

individuals and any information which could identify them has been withheld from disclosure

pursuant to Exemption (b)(7)(D)-1.

## CONCLUSION

(87)   The FBI has processed and released all segregable information from the records

responsive to plaintiff's two FOIPA requests for specific documents concerning Doris Lewis Bey

and Tonya Lewis Bey, also known as Tonya Timmons. The FBI has carefully examined the

records at issue in this litigation case and has released 19 pages in their entirety and 93 pages with

redactions of information. These records were processed for release to plaintiff with carefully

tailored redactions of certain information pursuant to Privacy Act Exemption (j)(2), 5 U.S.C. §

552a(j)(2) and FOIA Exemptions (b)(2), (b)(6), (b)(7)(C) and (b)(7)(D), 5 U.S.C. § 552(b)(2),

(b)(6), (b)(7)(C) and (b)(7)(D).  Furthermore, the FBI carefully examined the remaining pages

withheld in part, and determined that the information withheld from plaintiff in this case, if

disclosed, could reasonably be expected to impede the effectiveness of the FBI's internal law

enforcement procedures; cause unwarranted invasions of the privacy interests of third party

individuals; and disclose the identities of confidential sources of the FBI.  Accordingly, the FBI has

released to plaintiff all reasonably segregable, nonexempt information in these two FOIPA

requests.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Executed this _____ day of May, 2006.


DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Federal Bureau of Investigation
Washington, D.C.

-38-