**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JERRY LEWIS BEY,** ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 05-1076 (JGP)** |
| **v.** ) | |
| ) | |
| **U.S. DEPARTMENT OF JUSTICE,** ) | |
| **Federal Bureau of Investigation,** ) | |
| **Defendant.** ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S MOTION IN OPPOSITION TO**
**DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

On June 7, 2006, plaintiff filed a Motion in Opposition to Defendant's Second Motion for

Entry of Summary Judgment ("Opp. to Second Motion for Summ. Judg.").  In plaintiff's motion,

he argues that, in response to his Freedom of Information-Privacy Act ("FOIPA") request,

defendant did not conduct an adequate search for records in Federal Bureau of Investigation St.

Louis File Number 245B-SL-5, concerning his ex-wife, in her former name, Tonya Brown.[1]  See

Opp. to Second Motion for Summ. Judg., pp. 1-2, 11, 12.  Defendant files this Reply in response

to plaintiff's opposition.  To facilitate review of this matter, the Court is respectfully referred to

the Fourth Declaration of David M. Hardy ("Fourth Hardy Dec.") attached hereto as Exhibit 1,

which incorporates the following: the Third Declaration of David M. Hardy ("Third Hardy

Dec."), which was filed with the Court on May 19, 2006 with Defendant's Second Motion for

Summary Judgment; the Second Declaration of David M. Hardy ("Second Hardy Dec."), which

---

[1] Plaintiff's ex-wife is also known as Tonya Lewis-Bey.  See Opp. To Second Motion for
Summ. Judg., p. 4.  She remarried on November 21, 2001, and changed her name to Tonya
Timmons.  See Third Hardy Dec. ¶ 23 and Exhibit Q.

was filed with the Court on May 18, 2006 with Defendant's Reply to Plaintiff's Opposition to Summary Judgment; the First Declaration of David M. Hardy ("Hardy Dec."), which was filed with the Court on October 25, 2005 with Defendant's Motion for Summary Judgment; and attachments thereto as well as the entire record in this case.

The Fourth Hardy Declaration was prepared by David M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division at Federal Bureau of Investigation Headquarters ("FBIHQ").  Fourth Hardy Dec. ¶ 1.  Mr. Hardy is familiar with the procedures followed by the Federal Bureau of Investigation ("FBI") in responding to requests for information from its files pursuant to the provisions of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.  See Fourth Hardy Dec. ¶ 3.  Specifically, Mr. Hardy is aware of the treatment which has been afforded the FOIPA request of plaintiff "which seeks access to all records concerning his ex-wife Tonya Lewis Bey, also known as Tonya Brown and Tonya Timmons, which are contained in St. Louis Office File Number 245 B-SL-5."  Id.  The Fourth Hardy Declaration submitted in support of this Reply meets the requirements of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).  It demonstrates through detailed, non-conclusory and good-faith averments that, in this case, the FBI engaged in a good-faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested, see Fourth Hardy Dec. ¶¶ 9-10, and provides the Court with the requisite basis to grant defendant's motion for summary judgment.

## II.  BACKGROUND INFORMATION

By letter dated April 9, 2004, Tonya S. Timmons requested that Federal Bureau of

Investigation Headquarters disclose to plaintiff all records maintained on her in St. Louis File 245B-SL-5.  Third Hardy Dec. ¶ 26 and Exhibit T.  The letter indicated that the records concerned an investigation that began in March of 1983.  She stated that, in 1983, her name was Tonya S. Brown.  Id.  With the letter, she included a Privacy Waiver and Certification of Identity Form as well as identification in the name of Tonya S. Timmons.

By letter dated May 3, 2004, plaintiff informed the FBI that "the information would be found under the name Tonya Brown, her maiden name, not Lewis Bey or Timmons."  Id. ¶ 27 and Exhibit U.  By letter dated July 21, 2004, plaintiff inquired about the April 9, 2004 request of "Mrs. Tonya Timmons, maiden name of Tonya Lewis Bey . . . ."  Id. ¶ 28 and Exhibit V.  In this letter, plaintiff did not mention the name Tonya Brown.  See Exhibit V.  By letter dated November 20, 2004, plaintiff inquired about the April 9, 2004 FOIA request of his "ex-wife Tonya Timmons (Tonya Lewis Bey) [for] . . . records in . . . St. Louis file 245B-5 . . . ."  Id. ¶ 30 and Exhibit X.  In this letter, plaintiff did not mention the name Tonya Brown.  See Id. and Exhibit V.  Apparently, because inquiries after May 3, 2004 only mentioned the names Tonya S. Timmons and Tonya Lewis Bey, the FBI did not conduct a search in St. Louis File Number 245B-SL-5 for records in the name of Tonya Brown.  In response to plaintiff's Opposition to Defendant's Second Motion for Entry of Summary Judgment, plaintiff has conducted that search.[2]

---

[2]In his Opposition to Defendant's Second Motion for Entry of Summary Judgment, plaintiff also addressed his September 20, 2002 FOIPA request to FBIHQ for information contained in St. Louis Office File Number 245B-SL-5, pertaining to his ex-wife, Doris Lewis Bey, whose maiden name is Doris Franklin.  Opp. To Second Motion for Summ. Judg. pp. 2-3; see Third Declaration of David M. Hardy ¶ 7.  Plaintiff indicated that "the issue raise[d] regarding the[se] records in FBI St. Louis file 245B-5 . . . is moot as plaintiff accepts defendant['s] representation that there [is] (sic) no more records in file 245B-5 to be released."

### III.  THE SEARCH FOR, AND RELEASE OF, RECORDS REGARDING TONYA BROWN IN ST. LOUIS FILE NUMBER 245B-SL-5

St. Louis Office File Number 245B-SL-5 pertains to an FBI narcotics investigation of plaintiff and several other individuals.  "This investigation is captioned 'Jerry Lewis Bey; Vernon Whitlock, Jr.; the Moorish Science Temple of America, et al; Narcotics Matter; Organized Crime Drug Enforcement Task Force Case.'" Fourth Hardy Dec. ¶ 9.  The investigation, which concerned the distribution of heroin and other controlled substances, "was conducted by the Organized Crime Drug Enforcement Task Force, of which the FBI St. Louis Field Office was a participant along with other federal law enforcement agencies (including the Drug Enforcement Administration and the Bureau of Alcohol, Tobacco and Firearms) and local law enforcement agencies (including the St. Louis Police Department and the Webster Groves, Missouri Police Department)."  Id.  The FBI has jurisdiction over this type of law enforcement investigation pursuant to 21 U.S.C. § 801 et seq. (the Comprehensive Drug Abuse Prevention and Control Act of 1970, also referred to as the Controlled Substances Act) and 21 U.S.C. § 841 (Manufacture and Distribution of a Controlled Substance).  Id.

Pursuant to this litigation, all documents contained in St. Louis Office File Number 245-B-SL-5 were manually reviewed to locate any document with information in the names of Tonya Brown and Tonya Lewis Bey.  Id. ¶ 10.  "This search resulted in the location of 639 pages of documents.  These "documents pertain[ed] to her relationship with the plaintiff; her telephone toll records obtained by the FBI through the use of Administrative Subpoenas in 1986; the results of a Pen Register placed on her telephone number (314) 741-3118 by the FBI in 1986 through

_____

See Opp. to Motion for Summ. Judg., p. 3.

4

application with the United States District Court, Eastern District of Missouri, Eastern Division; and a physical surveillance of the apartment at 11882 San Remo in St. Louis that she shared with plaintiff in 1986."[3]  Id.

The 639 pages of documents were reprocessed to achieve maximum disclosure.  Certain information which previously was withheld from disclosure is now being released.  Id. ¶ 11. Copies of all released pages provided to plaintiff are attached as Exhibit A.  "Each page has been consecutively numbered as 'TONYA-1' through 'TONYA-639' at the bottom of the page."  Id. The exemptions asserted by the FBI as grounds for withholding information in the records are Privacy Act Exemption (j)(2), 5 U.S.C. §§ 552(a)(j)(2), and FOIA Exemptions (b)(3), (b)(6), and (b)(7)C), 5 U.S.C. §§ 552(b)(3), (b)(6), and (b)(7)(C).  Id.

The FBI utilized a coded format to assist the Court and plaintiff in reviewing the information withheld.  Each instance of information withheld is accompanied by a coded designation that corresponds to the Privacy Act and FOIA exemptions asserted. See Appendix A.

## IV.  APPLICATION OF FREEDOM OF INFORMATION/PRIVACY ACT EXEMPTIONS

### A- The FBI Properly Applied Privacy Act Exemption (j)(2)

Subsection (j)(2) of the Privacy Act allows an agency to promulgate regulations exempting from mandatory disclosure:

---

[3]  "A Pen Register is an electronic device which registers the dialed telephone numbers of all outgoing calls from a particular telephone number.  Only the actual telephone numbers which are dialed from the targeted telephone number are registered and no actual voice content of any telephone calls is recorded.   The results of a Pen Register [are] a listing of the frequency and duration of the telephone numbers dialed from the target telephone number, which are then analyzed by the FBI for possible investigative leads."  Id. n.1.

5

> records maintained by an agency or component thereof which
> performs as its principal function any activity pertaining to the
> enforcement of criminal laws, including police efforts to prevent,
> control, or reduce crime or to apprehend criminals, and the
> activities of prosecutors, courts, correctional, probation, pardon, or
> parole authorities, and which consists of . . . (B) information
> compiled for the purpose of a criminal investigation, including
> reports of informants and investigators, and associated with an
> identifiable individual; or (C) reports identifiable to an individual
> compiled at any stage of the process of enforcement of the criminal
> laws from arrest or indictment through release from supervision.

5 U.S.C. § 552a (j)(2).

The investigatory file and records at issue in this litigation are part of the FBI's Central

Records System at the St. Louis Office, and pertain to the criminal narcotics investigation of

plaintiff and other individuals, including Tonya Lewis Bey also known as Tonya Brown.  Id. ¶

15.  Accordingly, these records are exempt from disclosure in their entirety under the Privacy

Act, 5 U.S.C. § 552a(j)(2), in conjunction with 28 C.F.R. § 16.93 (2003).  Although access to

these records was denied under the Privacy Act, they [also] have been processed under the . . .

provisions of . . . FOIA."  Id.; see infra.

### B- The FBI Properly Applied Privacy Act Exemption b(3)

Exemption 3 of FOIA permits the withholding of information prohibited from disclosure

by another statute if that statute either:  (A) requires that the matters be withheld from the public

without discretion, or (B) establishes particular criteria for withholding or refers to particular

types of matters to be withheld.  See 5 U.S.C. § 552(b)(3); Smith v. United States, 251 F.3d

1047, 1048-49 (D.C. 2001).  "To qualify as a withholding provision, a statute must be 'the

product of congressional appreciation of the dangers inherent in airing particular data' and must

'incorporate[] a formula whereby the administrator may determine precisely whether the

disclosure in any instance would pose the hazard that Congress foresaw.'" Wisconsin Project on Nuclear Arms Control v. U.S. Dep't of Justice, 317 F.3d 275, 290 (D.C. Cir. 2003) (quoting American Jewish Congress v. Kreps, 574 F.2d 624, 628-29 (D.C. Cir. 1978)); see also Irons & Sears v. Dann, 606 F.2d 1215, 1200 (D.C. Cir. 1979) ("only explicit nondisclosure statutes that evidence a congressional determination that certain materials ought to be kept in confidence will be sufficient to qualify under the exception.").

FOIA Exemption (b)(3)-1 has been asserted to exempt from disclosure certain information contained in a letter from the United States Attorney for the Eastern District of Missouri to the recipient of Federal Grand Jury Subpoenas dated April 3, 1986.[4]  Fourth Hardy Dec. ¶ 17.  The information which was subpoenaed is specifically exempted from disclosure pursuant to Federal Rule of Criminal Procedure 6(e).  Id.  "Rule 6(e) embodies a broad, sweeping policy of preserving the secrecy of the inner workings of federal grand juries."  Id.  The information withheld pursuant to Exemption (b)(3)-1 consists of a) the name of a third-party individual, and the title and address of the business organization which was being commanded to provide certain records; and b) information identifying the specific business records which were to be provided to the Federal Grand Jury.  Id.  Disclosure of this information would violate the secrecy of the Federal Grand Jury proceedings, reveal the inner workings of the Federal Grand Jury, and identify the specific records which were subpoenaed.  Id.  Therefore, because this information is exempted from disclosure pursuant to Federal Rule of Civil Procedure 6(e), the FBI has properly asserted FOIA Exemption (b)(3)-1 to withhold this information.

---

[4]  FOIA Exemption (b)(3)-1 has been asserted to exempt from disclosure certain information which is specifically exempted from disclosure pursuant to Rule 6(e) of the Federal Rules of Criminal Procedure on the following pages of Exhibit A: TONYA 103-105.

### C-  The FBI Properly Applied Privacy Act Exemption b(6)

FOIA Exemption (b)(6) protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6); Washington Post Co. v. U.S. Dep't of Agriculture, 943 F.Supp. 31, 33 (D.D.C. 1996).  The "similar files" language of the statute has been interpreted broadly by the Supreme Court: "when disclosure of information which applies to a particular individual is sought from [any] Government records, courts must determine whether release of the information would constitute a clearly unwarranted invasion of that person's privacy."  U.S. Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982).  See Washington Post Co. v. U.S. Dep't of Health and Human Serv., 690 F.2d 252, 260 (D.C. Cir. 1982) ("[A]ll information which 'applies to a particular individual' is covered by Exemption 6, regardless of the type of file in which it is contained.").

Application of Exemption 6 does not require that the information be "embarrassing or of an intimate nature, it will be protected so long as it invites 'clearly unwarranted' intrusions."  Washington Post Co., 943 F.Supp. at 34 (citing NARFE v. Horner, 879 F.2d 873, 875 (D.C. Cir. 1989), cert. denied, 494 U.S. 1078 (1990)).  Moreover, as with any request under FOIA, the identity of the requesting party is irrelevant.  Id.  Thus, in evaluating the privacy interests at stake, the pertinent question is not merely what the requester intends to do with the information, but "what anyone else might do with it."  Id. (internal quotations omitted).

In order to establish that an invasion of personal privacy is "unwarranted" pursuant to Exemption 6, a court "must balance the public interest in disclosure against the interest Congress intended the exemption to protect."  U.S. Dep't of Defense v. Federal Labor Relations Authority,

510 U.S. 487, 495 (1994). The only relevant public interest in this equation is that of "contributing significantly to public understanding of the operations or activities of the government." Id.; see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 109 S.Ct. 1468, 1481-1482 (1989) (the only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to). Moreover, a court need perform this balancing only if a qualifying public interest has been established. Nat'l Archives and Records Admin. v. Favish, 541 U.S. 157, 174-75 (2004). See Fitzgibbon v. CIA, 911 F.2d 755, 768 (D.C. Cir. 1990) ("We need not linger over the balance; something outweighs nothing every time.") (quoting NARFE v. Horner, 879 F.2d at 879 (D.C. Cir. 1989)).

In asserting this exemption, the FBI examined each item of information "to determine the degree and nature of the privacy interest of every individual whose name and/or identifying information appeared in [its] records." Fourth Hardy Dec. ¶ 19. The FBI also examined whether the information would inform plaintiff and the general public about the FBI's performance of its mission to enforce federal criminal statutes or whether the information would shed light on the FBI's performance of its statutory duties. Id. "In each instance where information was withheld, it was determined that individual privacy rights outweighed the public interest." Id. To reveal the names and/or identifying information of third-party individuals which appeared in these records would not inform the general public about the FBI's performance of its mission. Rather, the release "could reasonably be expected to cause harassment, embarrassment and/or unsolicited publicity[, and] would constitute an unwarranted invasion of . . . personal privacy."

9

Id.

"During the review of these records, the passage of time and its effect on the privacy interests of the third-party individuals was considered." Id. ¶ 20.  It was determined that "the privacy interests are as [relevant] now as when the records were created." Id.  Further, there was "no public or historical interest in these records which would outweigh the privacy interests of these third-party individuals." Id.

### (b)(6)-1    Names of FBI Special Agents and Support Personnel

The FBI asserted "FOIA Exemption (b)(6)-1 . . . in conjunction with FOIA Exemption (b)(7)(C)-1 to exempt from disclosure the names of FBI Special Agents and support personnel who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in this criminal investigation . . . ." Id. ¶ 21.[5]  In conducting their investigations, FBI Special Agents "conduct searches and make arrests, both of which result in reasonable, but nonetheless serious disturbances in the lives of individuals." Id.  It is possible for a person targeted by such law enforcement action to carry a [lasting] grudge . . .and [attempt] to seek revenge on the agents involved in the investigation." Id.  "The publicity associated with the release of the name[s] of . . . [a]gent[s] in connection with a particular investigation could trigger hostility towards the . . . [a]gent[s] . . . ." Id.  It could subject them to unnecessary, unofficial questioning as to the conduct of the investigation.  Moreover, publicity regarding a "particular

---

[5]  FOIA Exemption (b)(6)-1 was asserted in conjunction with FOIA Exemption (b)(7)(C)-1 to exempt from disclosure the names of FBI Special Agents and support personnel on the following pages of Exhibit A: TONYA 1, 2, 5, 8, 9, 11, 12, 14, 16-18, 21, 22, 73, 74, 76, 77, 98, 102, 105, 106, 112, 115, 116, 125-129, 139-141, 149, 150, 154, 155, 157, 158, 162, 163, 171-174, 179-182, 186-189, 194-199, 201, 210, 211, 215, 220, 221, 224-228, 232-237, 246-249, 255-260, 272-274, 280, 283-295, 442, 599, 601, 603, 624-627, and 639.

investigation conducted by FBI Special Agents [could] seriously impair the [agents'] effectiveness in conducting future investigations." This is true whether or not the agents are currently employed by the FBI. Id.

The names of FBI support personnel also have been withheld pursuant to FOIA Exemption (b)(6)-1. Id. ¶ 21. "Support personnel are assigned to handle tasks relating to FBI investigations and [have access to] . . . information concerning official law enforcement investigations." Id. If their identities were released, support personnel could "become targets of harassing inquiries for unauthorized access to FBI investigations . . . ." Id.

Next, the records were examined to "determine whether there was any public interest that outweighed the substantial privacy interests of the FBI Special Agents and support [personnel]." Id. ¶ 23. The FBI could not identify any discernible public interest because the disclosure of the names would not inform the general public about the FBI's performance of its mission or shed light on the FBI's duties. Id. Therefore, the individual privacy interests clearly outweighed any public interest in disclosures, and FOIA Exemption (b)(6)-1 was properly asserted.

### (b)(6)-2    Name of a Special Agent of the Bureau of Alcohol, Tobacco and Firearms

The FBI has asserted "FOIA Exemption (b)(6)-2 in conjunction with FOIA Exemption (b)(7)(C)-2 to exempt from disclosure the name of a Special Agent of the Bureau of Alcohol, Tobacco and Firearms ("ATF") who participated in the investigation reported in these FBI documents."[6] Id. ¶ 24. "The rationale for protecting the identity of this [agent] . . . is [the same

---

[6]    FOIA Exemption (b)(6)-2 has been asserted in conjunction with FOIA Exemption (b)(7)(C)-2 to exempt from disclosure the name of a Special Agent of the BATF on the following pages of Exhibit A: TONYA 12, 119, 146, 161, 178, 213, 214, and 279.

as] the rationale for protecting the identities of FBI Special Agents." Id.; see supra pp. 11-12. Therefore, the release of the agent's name implicates substantial privacy interests.

The records containing the name of the ATF agent were examined to determine whether there was any public interest that outweighed the agent's substantial privacy interests. Id. ¶ 25. The FBI could not identify any discernible public interest [because] the disclosure of the name of this agent would not inform the public about the FBI or ATF's performance of its mission or shed light on their duties. See id. Therefore, FOIA Exemption (b)(6)-2 was properly asserted to protect this agent's name.

### (b)(6)-3        Names of Local Law Enforcement Officers

_____ "FOIA Exemption (b)(6)-3 has been asserted in conjunction with FOIA Exemption (b)(7)(C)-3 to exempt from disclosure the names of local law enforcement officers of the St. Louis Police Department and the Webster Groves, Illinois Police Department."[7] Id. ¶ 26. In their official capacities, these police officers assisted the FBI in this narcotics investigation. Id. The rationale for protecting the identities of these officers is the same as the rationale for protecting the identities of the FBI and ATF agents. Id.; see supra pp. 11-12. "Disclosure of the names of these . . . officers could subject them to unauthorized inquiries and/or harassment . . . [and] would . . . constitute an unwarranted invasion of their personal privacy." Id.

The records were examined to determine whether there was any public interest that outweighed the substantial privacy interests of these local law enforcement officers. Id. ¶ 27.

_____

[7] FOIA Exemption (b)(6)-3 has been asserted in conjunction with FOIA Exemption (b)(7)(C)-3 to exempt from disclosure the names of local law enforcement officers on the following pages of Exhibit A: TONYA 12, 13, 71, 73, 107-111, 121-124, 129-138, 143, 145, 147-153, 156, 159, 165-170, 183-185, 190-193, 200, 202-209, 213, 214, 217, 219, 222-224, 229-231, 238-241, 244, 245, 250-254, 261-271, 275-278, 281, 282, and 624.

The FBI could not identify any discernible public interest in the disclosure of the names of these officers because disclosure would not inform the public about the FBI's performance of its mission or shed light on its duties.  See id.  Therefore, the FBI properly asserted Exemption (b)(6)-3 to protect the names of these local law enforcement officers.

**(b)(6)-4    Names and Identifying Information of Individuals Who Were of Investigative Interest to the FBI**

"FOIA Exemption (b)(6)-4 has been asserted in conjunction with FOIA Exemption (b)(7)(C)-4 to exempt from disclosure the names and/or identifying information of third-party individuals in whom the FBI had an investigative interest [during] this narcotics investigation."[8] Id. ¶ 28.  The protected personal information about these individuals includes, but is not limited to, their names, home addresses, home telephone numbers, and their relationship with plaintiff and other individuals.  Id.  "Being linked with any law enforcement investigation carries a strong negative connotation.  To release the identities of these individuals to the public in the context of a[n] FBI criminal investigation could subject the[ individuals] to [undue public attention], harassment [and/]or embarrassment."  Id.  The personal privacy interests of these individuals would be severely infringed upon if their identities were released.  Id.

The FBI balanced these individuals' substantial privacy interests against the public interest in disclosure.  Id. ¶ 29.  In doing so, the FBI could not identify any legitimate public

---

[8]    FOIA Exemption (b)(6)-4 has been asserted in conjunction with FOIA Exemption (b)(7)(C)-4 to exempt from disclosure the names and identifying information of individuals who were of investigative interest to the FBI on the following pages of Exhibit A: TONYA 3, 6, 7, 10, 16-21, 23-34, 43-62, 71-73, 108, 112, 113, 115, 117-120, 122, 123, 127, 130, 131, 133-140, 142, 144, 146, 147, 149, 150, 154, 155, 157, 158, 160, 162-164, 167, 171, 174, 175, 177, 179, 181, 183-185, 190-199, 202, 203, 205, 206, 208, 210, 212-215, 217, 221-233, 235, 236, 240-243, 246, 248-255, 258, 261-265, 268, 272, 275-277, 279, 283-286, 291-294, and 586.

interest in the release of this information as it would not inform the general public about, or shed any light on, the operations and activities of the FBI.  Id.  Therefore, the information about these third-party individuals was properly withheld pursuant to FOIA Exemption (b)(6)-4.

### (b)(6)-5  Names and Identifying Information of Individuals who are Merely Mentioned in FBI Investigative Records

"Exemption (b)(6)-5 has been asserted in conjunction with FOIA Exemption (b)(7)(C)-5 to exempt from disclosure the names and [business titles] of individuals who [were] incidentally mentioned in these FBI investigative records."[9]  Id. ¶ 30.  The release of this information "could cause unsolicited and unnecessary attention to be focused on these individuals and/or their family members."  Id.  Further, public release of their names and business titles in the context of an FBI criminal investigation could cast them in an unfavorable light.  Id.

The FBI balanced these substantial privacy interests against the public interest in disclosure.  Id. ¶ 31.  Because the release of this information would not inform the public about, or shed any light on, the operations and activities of the FBI, there was no public interest in its release.  Id.  Therefore, the FBI properly withheld the names and identifying information of the third-party individuals pursuant to FOIA Exemption (b)(6)-5.

### D- The FBI Properly Applied Privacy Act Exemption b(7)(C)

Exemption (b)(7)(C) of FOIA protects from disclosure records or information compiled for law enforcement purposes to the extent that the disclosure of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of privacy.  5

---

[9]  FOIA Exemption (b)(6)-5 has been asserted in conjunction with FOIA Exemption (b)(7)(C)-5 to exempt from disclosure the names and identifying information of individuals who are merely mentioned in these FBI investigative records on the following pages of Exhibit A: TONYA 4, 8, 75, 76, 103, and 105.

U.S.C. § 552(b)(7)(C).  "[The term 'law enforcement purpose' is not limited to criminal

investigations but can also include civil investigations and proceedings in its scope." Mittleman

v. Office of Personnel Mgmt., 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123

(1997), citing Pratt v. Webster, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982).  When, however, a

criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do

like claims by other agencies." Keys v. U.S. Dep't of Justice, 830 F.2d 337, 340 (D.C. Cir.

1987), citing Pratt, 673 F.2d at 418.  A criminal law enforcement agency must simply show that

"the nexus between the agency's activity . . . and its law enforcement duties" is "based on

information sufficient to support at least 'a colorable claim' of its rationality." Keys, 830 F.2d at

340 (quoting Pratt, 673 F.2d at 421).

     Once the agency has demonstrated that the records were compiled for law enforcement

purposes, the Court must next consider whether the release of information withheld "could

reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. §

522(b)(7)(C).  This determination necessitates a balancing of the individual's right to privacy

against the public's right of access to information in government files.  See, e.g., U.S. Dep't of

Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 776-780 (1989).

     The Supreme Court has made clear that "whether disclosure of a private document under

exemption 7(C) is warranted must turn on the nature of the requested document and its

relationship to the basic purpose of the Freedom of Information Act to open agency action to the

light of public scrutiny, Dep't of Air Force v. Rose, [425 U.S. 352, 372 (1976)], rather than on

the particular purpose for which the document is being requested." Reporter's Comm., 489 U.S.

at 772 (internal quotation marks omitted).  Information that does not directly reveal the

15

operations or activities of the government "falls outside the ambit of the public interest that the

FOIA was enacted to serve." Id. at 775.  That public interest is to "shed[] light on an agency's

performance of its statutory duties." Id. at 772.  The plaintiff bears the burden of establishing

that the "public interest in disclosure is both significant and compelling in order to overcome

legitimate privacy interests." Perrone v. FBI, 908 F.Supp. 24, 26 (D.D.C. 1995), citing Senate of

Puerto Rico v. U.S. Dep't of Justice, 823 F.2d 574, 588 (D.C. Cir. 1987).

     Significantly, it is the "interest of the general public and not that of the private litigant"

that matters.  Brown v. FBI, 658 F.2d 71, 75 (2d Cir.1981).  "[The only public interest relevant

for purposes of exemption 7(C) is one that focuses on 'the citizens' right to be informed about

what their government is up to.'" Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1282 (D.C.

Cir.1992) (quoting Reporters Comm., 489 U.S. at 773) (internal quotation marks omitted).   The

privacy interests of third parties mentioned in law enforcement files are "substantial," while

"[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is

insubstantial." SafeCard Services, Inc. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir.1991).  The

District of Columbia Circuit has held "categorically" that "unless access to names and addresses

of private individuals appearing in files within the ambit of exemption 7(C) is necessary in order

to confirm or refute compelling evidence that the agency is engaged in illegal activity, such

information is exempt from disclosure." SafeCard Services, 926 F.2d at 1206.

     The Supreme Court in Nat'l Archives and Records Admin. v. Favish, 541 U.S. at 159,

clearly defined the standard to be applied when the courts conduct the balancing test under

Exemption 7(C).

     Where there is a privacy interest protected by [E]xemption 7(C) and the public interest

being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.

Favish, 124 S.Ct. at 1581.

Exemption 7(C) consistently has been held to protect the identities of suspects who are identified in agency records in connection with law enforcement investigations. Reporters Comm., 489 U.S. at 780; Computer Professionals for Social Responsibility v. U.S. Secret Service, 72 F.3d 897, 904 (D.C. Cir. 1996) (noting "'strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity'" (quoting Dunkelberger v. U.S. Dep't of Justice, 906 F.2d 779, 781 (D.C. Cir. 1990)). Indeed, an agency may categorically assert exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity. Reporters Comm., 489 U.S. at 780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); SafeCard Services, 926 F.2d at 1206.

Likewise, the names of law enforcement officers who work on criminal investigations have traditionally been protected against release by exemption 7(C). Davis, 968 F.2d at 1281; Lesar v. U.S. Dep't of Justice, 636 F.2d 472, 487-488 (D.C. Cir. 1980). Similarly, individuals who provide information to law enforcement authorities, like the law enforcement personnel themselves, have protectable privacy interests in their anonymity. Computer Professionals for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Dep't of Justice, 683 F.Supp. 273, 275 (D.D.C. 1987).

"The records at issue in this litigation were compiled during the course of the FBI

criminal investigations concerning the distribution of heroin and other controlled substances.

Fourth Hardy Dec. ¶ 34. Accordingly, these records were compiled for law enforcement

purposes and readily meet the threshold requirement of Exemption (b)(7). The remaining inquiry

is whether their disclosure "could reasonably be expected to constitute an unwarranted invasion

of personal privacy." Id.

     "In asserting this exemption, each piece of information was scrutinized to determine the

nature and strength of the privacy interest of any individual whose name and/or identifying data

appear[ed] in these records. In withholding the information, the individual's privacy interest was

balanced against the public's interest in disclosure." Id. The public interest in disclosure of this

information was determined by whether the information would directly reveal the operations or

activities of the FBI or shed light on the FBI's performance of its statutory duties. Id. A review

of the records revealed that the release of the third-party information would not shed any light on

how the FBI performed its statutory investigative duties. Id. In addition, to reveal the names

and/or identifying information of third-party individuals could reasonably be expected to create

harassment, embarrassment, or unsolicited publicity. Id. Therefore, it is clear that the individual

privacy rights outweighed the public interest.

     "During the review of these records, the passage of time and its effect on the privacy

interests of third-party individuals was considered." Id. ¶ 37. It was determined that the privacy

interests are as [compelling and relevant] now as when the records were created. Id. Therefore,

"there [was] no public or historical interest in these records which would outweigh the privacy

interests of these third party individuals." Id.

**(b)(7)(C)-1    Names of FBI Special Agents and Support Personnel**

The FBI properly asserted "FOIA Exemption (b)(7)(C)-1 . . . in conjunction with FOIA Exemption (b)(6)-1 to exempt from disclosure the names of FBI Special Agents and support personnel who were responsible for conducting, supervising, and/or maintaining the investigative activities reported in this criminal investigation . . . ."[10] Id. ¶ 38. These names were properly withheld because these individuals have substantial privacy interests in the non-disclosure of their names. See supra pp. 11-12. In addition, the release of the names would not inform the general public about the FBI's performance of its mission or shed light on its duties. Therefore, FOIA Exemption (b)(7)(C)-1 was properly asserted.

**(b)(7)(C)-2    Name of a Special Agent of the Bureau of Alcohol, Tobacco and Firearms (BATF)**

"FOIA Exemption (b)(7)(C)-2 has been asserted in conjunction with FOIA Exemption (b)(6)-2 to exempt from disclosure the name of a[n ATF] . . . who participated in the investigation reported in these FBI documents."[11] Id. ¶ 41. This Special Agent has a "substantial privacy interest in the non-disclosure of his name to the public. See supra p. 13. In addition, the release of the name would not demonstrate how the FBI or the ATF performed its statutory duties. Therefore, FOIA Exemption (b)(7)(C)-2 was properly asserted.

---

[10]  FOIA Exemption (b)(7)(C)-1 was asserted in conjunction with FOIA Exemption (b)(6)-1 to exempt from disclosure the names of FBI Special Agents and support personnel on the following pages of Exhibit A: TONYA 1, 2, 5, 8, 9, 11, 12, 14, 16-18, 21, 22, 73, 74, 76, 77, 98, 102, 105, 106, 112, 115, 116, 125-129, 139-141, 149, 150, 154, 155, 157, 158, 162, 163, 171-174, 179-182, 186-189, 194-199, 201, 210, 211, 215, 220, 221, 224-228, 232-237, 246-249, 255-260, 272-274, 280, 283-295, 442, 599, 601, 603, 624-627, and 639.

[11]  FOIA Exemption (b)(7)(C)-2 has been asserted in conjunction with FOIA Exemption (b)(6)-2 to exempt from disclosure the name of a Special Agent of the BATF on the following pages of Exhibit A: TONYA 12, 119, 146, 161, 178, 213, 214, and 279.

**(b)(7)(C)-3        Names of Local Law Enforcement Officers**

_____ "FOIA Exemption (b)(7)(C)-3 has been asserted in conjunction with FOIA Exemption

(b)(6)-3 to exempt from disclosure the names of local law enforcement officers of the St. Louis

Police Department and the Webster Groves, Illinois Police Department [who assisted the FBI in

this investigation]."[12] Id. ¶ 43.  The privacy interests in the non-disclosure of their names is

substantial.  See supra p. 14.  In addition, the release of their identities would not directly reveal

the operations or activities of the FBI or shed light on the FBI's performance of its duties.

Hence, the FBI properly asserted Exemption (b)(7)(C)-3 to protect the names of these local law

enforcement officers.

**(b)(7)(C)-4        Names and Identifying Information of Individuals Who Were of
                Investigative Interest to the FBI**

"FOIA Exemption (b)(7)(C)-4 has been asserted in conjunction with FOIA Exemption

(b)(6)-4 to exempt from disclosure the names and/or identifying information of third-party

individuals in whom the FBI had an investigative interest [during] this . . . [n]arcotics

investigation."[13] Id. ¶ 45.  In balancing the privacy interests implicated, see supra p. 15, against

---

[12]   FOIA Exemption (b)(6)-3 has been asserted in conjunction with FOIA Exemption
(b)(7)(C)-3 to exempt from disclosure the names of local law enforcement officers on the
following pages of Exhibit A: TONYA 12, 13, 71, 73, 107-111, 121-124, 129-138, 143, 145,
147-153, 156, 159, 165-170, 183-185, 190-193, 200, 202-209, 213, 214, 217, 219, 222-224, 229-
231, 238-241, 244, 245, 250-254, 261-271, 275-278, 281, 282, and 624.

[13]   FOIA Exemption (b)(7)(C)-4 has been asserted in conjunction with FOIA Exemption
(b)(6)-4 to exempt from disclosure the names and identifying information of individuals who
were of investigative interest to the FBI on the following pages of Exhibit A: TONYA 3, 6, 7, 10,
16-21, 23-34, 43-62, 71-73, 108, 112, 113, 115, 117-120, 122, 123, 127, 130, 131, 133-140, 142,
144, 146, 147, 149, 150, 154, 155, 157, 158, 160, 162-164, 167, 171, 174, 175, 177, 179, 181,
183-185, 190-199, 202, 203, 205, 206, 208, 210, 212-215, 217, 221-233, 235, 236, 240-243, 246,
248-255, 258, 261-265, 268, 272, 275-277, 279, 283-286, 291-294, and 586.

the lack of any legitimate public interest in the release of the identifying information of these individuals, it is clear that FOIA Exemption (b)(7)(C)-4 was properly applied.

### (b)(7)(C)-5    Names and Identifying Information of Individuals who are Merely Mentioned in FBI Investigative Records

"Exemption (b)(7)(C)-5 has been asserted in conjunction with FOIA Exemption (b)(6)-5 to exempt from disclosure the names and [business titles] . . . of individuals who [were] incidentally mentioned in these FBI investigative records."[14] Id. ¶ 47.  The disclosure of this information in the context of an FBI investigation could cast these individuals and/or their families in an unfavorable light, see supra pp. 15-16, and would not shed any light on the FBI's performance of its statutory duties.  Therefore, this information was properly withheld pursuant to FOIA Exemption (b)(7)(C)-5.

## V.  THE SEARCH FOR TELEPHONE RECORDS

### A) Telephone Number (314) 355-6721

In his Amended Complaint, plaintiff sought records regarding residential telephone number (314) 355-6721.  The FBI determined that there was documentary evidence in St. Louis File 245B-SL-5 that telephone toll records for this number were obtained through the use of an Administrative subpoena.  Second Hardy Dec. ¶ 18; see First Hardy Dec. ¶ 38.  However, there was no documentary evidence that the records were retained.  First Hardy Dec. ¶ 39.

Plaintiff argues that "it's clear that these records did not just up and disappear."  Opp. To Second Motion for Summ Judg., p. 9.  However, the Second Hardy Declaration indicated that a

---

[14] FOIA Exemption (b)(7)(C)-5 has been asserted in conjunction with FOIA Exemption (b)(6)-5 to exempt from disclosure the names and identifying information of individuals who are merely mentioned in these FBI investigative records on the following pages of Exhibit A: TONYA 4, 8, 75, 76, 103, and 105.

probable explanation for the current lack of toll records in the file for residential phone number (314) 355-6721 is that the records were reviewed and analyzed by the FBI, determined to not be of any investigative and/or evidentiary value, and were not retained." See Second Hardy Dec. ¶ 38.[15]   The Second Hardy Declaration also explained that "there were several other instances in . . . file [245B-SL-5] in which telephone toll records of other subjects and suspects of the investigation were obtained through the use of an Administrative Subpoena, but were apparently also not retained in the file."  Second Hardy Dec. ¶ 39.

While Plaintiff may not agree, a complete exhaustive search and review of the all of the documents within St. Louis File Number 245B-SL-5 was undertaken, and the search did not locate any telephone toll records for (314) 355-6721.  Therefore, the FBI is unable to provide plaintiff with records it does not have.[16]   The mere "fact that a document once existed does not mean that it now exists; nor does the fact that an agency created [or received] a document necessarily imply that the agency has retained it."  Maynard v. CIA., 982 F.2d 547, 564 (1st Cir. 1993).  Moreover, even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent.  Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).

---

[15]Copies of documents in the file which demonstrated the request for the toll records were provided to plaintiff as Exhibit Q of the First Hardy Declaration.  See First Hardy Dec. ¶¶ 36-39 and Exhibit Q.

[16]In a good faith showing that a search for toll records for (314) 355-6721 was conducted, plaintiff was provided with the existing references to the telephone toll records that were located in the file.  These were provided to plaintiff as Exhibit P of the First Hardy Declaration.  See First Hardy Dec. ¶ 33 and Exhibit P.

**B) Telephone Number (314) 741-3341**

In his Amended Complaint, plaintiff also sought records regarding residential telephone

number 314-741-3341.[17]   The Second Hardy Declaration indicated that there was no

documentary evidence indicating that the FBI ever attempted to obtain toll records for that

telephone number.  Second Hardy Dec. ¶ 15.   Plaintiff states that it is "inconceivable that the

FBI . . . would subpoena records on one [telephone] number and not the other.  Opp to Second

Motion for Summ. Judg., p. 9.  However, the First Hardy Declaration provided a detailed

description of the searches conducted for the toll records for telephone numbers (314) 714-3341

by the Chief Division Counsel of the St. Louis Office as well as a Legal Administrative

Specialist at FBIHQ and none were located. First Hardy Dec. ¶¶ 30, 31, 34, 35; <u>see</u> Second Hardy

Dec. ¶ 22.  FOIA requires agencies to conduct reasonable searches for records pursuant to the

statute.  <u>See</u> <u>Weisburg v. U.S. Dep't of Justice,</u> 745 F. 2d 1476, 1485 (D.C. Cir. 1984).  In this

regard, agencies are required to make a "good faith effort to conduct a search for the requested

records, using methods which can be reasonably expected to produce the information requested."

<u>Oglesby v. Dep't of the Army,</u> 920 F. 2d 57, 68 (D.C. Cir. 1990). The fundamental "question is

not 'whether there might exist any other documents possibly responsive to the request, but rather

whether the search for those documents was adequate.'" <u>Steinberg v. U.S. Dep't of Justice</u> , 23

F.3d 548, 551 (D.C. Cir. 1994)(quoting <u>Weisberg</u>, 745 F.2d at 1485).

Here, although it was determined that the records sought were never obtained, the FBI did

conduct reasonable searches for the requested records "using methods which [were] reasonably

---

[17]In his motion, plaintiff appears to have mistakenly written the number (314) 741-*6721*
instead of (314) 741-3341.

expected to produce the information requested." Oglesby v. Dep't of the Army, 920 F.2d at 68.

Moreover, the FBI considered the possibility that there could be "additional locations where . . .

documents concerning these telephone toll records would reasonably be expected to be located,

and concluded that there [were] no other files, apart from the St. Louis file, in which these

telephone toll records could reasonably be located." Second Hardy Dec. ¶ 23. The FBI cannot

provide plaintiff with documentation it does not possess.

## VI. SEGREGABILITY

The Court of Appeals for the District of Columbia Circuit has held that a District Court

considering a FOIA action has "an affirmative duty to consider the segregability issue sua

sponte." Trans-Pacific Policing Agreement v. U.S. Customs Service, 177 F.3d 1022, 1028 (D.C.

Cir. 1999). FOIA requires that, if a record contains information that is exempt from disclosure,

any "reasonably segregable" information must be disclosed after deletion of the exempt

information unless the non-exempt portions are "inextricably intertwined with exempt portions."

5 U.S.C. § 552(b); Mead Data Cent., Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 260 (D.C.

Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the

agency must provide a "detailed justification" rather than "conclusory statements." Mead Data,

566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification"

that the exempt material would effectively be disclosed. Id. All that is required is that the

government show "with 'reasonable specificity'" why a document cannot be further segregated.

Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

Moreover, the agency is not required to "commit significant time and resources to the separation

of disjointed words, phrases, or even sentences which taken separately or together have minimal

or no information content." <u>Mead Data</u>, 566 F.2d at 261, n.55.

The FBI has clearly demonstrated that it processed and released all reasonably segregable

information to plaintiff unless 1) the records were exempted from mandatory disclosure; 2) the

records were prohibited from being disclosed by another statute; 3) the release of the records

would constitute an unwarranted invasion of personal privacy; or 4) the records were compiled

for law enforcement purposes and their disclosure would constitute unwarranted invasions of

privacy.  <u>See</u> Fourth Hardy Dec. ¶ 49.  "Accordingly, the FBI has released to plaintiff all

reasonably segregable, nonexempt information in this FOIPA request."  <u>Id</u>.

## **CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment should be granted.

Respectfully submitted,

_____

JEFFREY A. TAYLOR, D.C.. Bar # 498610
United States Attorney


_____

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____

MARIAN L. BORUM, D.C. Bar # 435409
Assistant United States Attorney
501 3rd Street, N.W., 4th Floor
Washington, D.C.  20530
(202) 514-6531
Counsel for Defendant

**CERTIFICATE OF SERVICE**

THIS IS TO CERTIFY that on this _____ day of October, 2006, a copy of the foregoing

was sent by First-Class Mail, postage prepaid, to:

**JERRY LEWIS-BEY**
**R22328-044**
**EDGEFIELD FEDERAL CORRECTIONAL INSTITUTION**
**P.O. Box 725**
**Edgefield, SC 29824**


_____
MARIAN L. BORUM
ASSISTANT UNITED STATES ATTORNEY